NEW ORLEANS AND NORTHEASTERN R. R. Co. *v.* F. E. REESE.

1. TRESPASS. *Railroad contractor. Liability of company for his acts.*
    A railroad company is not responsible for the wrongful act of a contractor in taking trees from the land of another in procuring material to be furnished under his contract. If the party acted as agent or employe of the company it would be liable.

2. MASTER AND SERVANT. *Relation, how determined. Mode of payment.*
    The mode of payment is a circumstance of much weight in solving the question as to whether the relation of master and servant exists but is not decisive.

3. SAME. *Where the relation does exist.*
    If a party is the mere instrument of a railroad company engaged to get materials and labor for it, and is to be paid for his services a compensation measured by his disbursements for the company, he is its agent and the company is liable for his acts as such.

4. SAME. *Circumstances fixing the relation.*
    Where a party who is engaged in constructing part of the roadbed of a railroad employs laborers whose names are entered on the pay roll of the company and are in fact employes of the company and receiving their pay from the company, and the party engaging them was merely the instrument of employing them for the company, this would fix his relation to the company as its servant.

5. SAME. *Independent contractor. Case in judgment.*
    K.'s contract with the railroad company was that he should complete the job which M. had, and was to be paid for it what the material and labor to be procured and furnished by him should cost and ten per cent. additional to that as his compensation. *Held*, that this did not make K. the servant of the company.

Appeal from the Circuit Court of Lauderdale County.

Hon. Samuel H. Terral, Judge.

F. E. Reese brought an action of trespass against the appellant railroad company to recover the statutory damages of fifteen dollars per tree for seventy-nine trees alleged to have been cut and taken by the company from his land without his permission. Reese obtained a judgment in the lower court, from which the railroad company appeals. The determining question in the case was whether one Kamper, who cut the trees in controversy, was in so doing acting as the servant or agent of the railroad company or was acting as an independent contractor.

The testimony is somewhat conflicting, and is not clear on either side.

S. Whinery, the engineer of the company, who had charge of the construction of that division of the defendant's road on which the trees were used, testified as to Kamper's relation to the road as follows : " One Mulholland had contracted to do the work and had failed. His contract was therefore declared forfeited. With the approval and consent of the officials of the company, I made a verbal contract with Mr. Kamper to go on and complete the work, agreeing to pay him his cost and ten per cent. additional to the cost for his profit. That arrangement was carried out. The company took no part whatever in the getting of the timber. Mr. Kamper got the timber. The officers knew nothing of where he was getting the timber. The understanding was that Kamper was to complete the work according to the contract and specifications with Mulholland. Mr. Kamper completed the work and was paid accordingly. In respect to the work to be done by Mr. Kamper, my duty was to see that the work was done according to contract; *and the company had to pay Kamper what Kamper had to pay,* for all labor and material used in the construction of the road, the hands to be hired and the materials to be purchased by Kamper. He took hold of the work just as Mulholland had left it, and part of the materials were on the ground. The ten per cent. was to cover the use of the tools which he furnished and a reasonable profit to him."

One witness for the plaintiff testified that Kamper told him that he

was not a contractor but merely an agent for the company. This statement Kamper denied when on the witness stand. It was shown by the hands employed by Kamper that the time of their work while working under Kamper was kept by a timekeeper of the railroad company, who gave them the certificates upon which they were to receive their pay ; that while they worked under Mulholland the company did not keep their time.

The giving of the following instructions for the plaintiff is one of the errors assigned : " If the jury believe from the evidence that the contract with John Kamper and defendant was that Kamper should complete the work left unperformed by Mulholland in the construction of a part of defendant's roadbed, and that Kamper should furnish all materials, tools, and hire all hands, and that he, Kamper, should be paid by the defendant exactly what he, Kamper, should pay out for such purposes and ten per cent. additional for his services, then Kamper was the agent of the defendant."

The following instruction with others was asked by the defendant and refused : "There being no evidence that Kamper was the servant of the defendant, or that the company authorized the alleged trespass, the jury will find for the defendant." The refusal of this instruction is assigned for error.

*J. W. Fewell*, for the appellant.

There is no question of fact as to the terms of Kamper's employment or contract. The testimony of Whinery and Kamper is nowhere contradicted, and even if it were, the court was asked to charge the jury that if the contract was as stated by Whinery the company was not liable. This the court refused to do, and such refusal is assigned for error ; and the court instructed that, according to the terms of the contract, the defendant was liable, and this is assigned for error.

1. The work to be done was prescribed by the written contract, and specifications of the former contractor, Mulholland. The *mode* of doing it was left to Kamper ; the company had nothing to do with the getting of the materials. Kamper furnished the materials, and the company did not know where he was getting them. The manner or method of payment was immaterial. If Kamper had

agreed to do the work at a certain price the amount of his profit or loss would have been *some* percentage on his investment.   Does it alter the reason or sense of the matter that his percentage of profit was fixed beforehand?   The mode of compensation was immaterial. Redfield on Railways, I, p. 506 ; Wood's Master and Servant 628 ; 51 Am. Dec. 192.

2. But, whether Kamper was technically an employe or a contractor, I insist that the company would not have been liable for this trespass.   I beg to note the broad distinction between the negligent act of omission or commission of the servant done or omitted in the course and *act* of the employment and his *collateral, willful, or reckless act*—his *quasi*-criminal act.   The rule which holds a master responsible *in damages* for the negligence of his servant— not committed under his master's eyes, and not authorized or encouraged by him, is a very harsh one and one which, if it has any support in reason, is founded on considerations of public policy—to prevent and indemnify against the acts of irresponsible persons carrying on the business of others and to enforce the selection of well-behaved servants.   The rule *respondeat superior* enforces care in the selection of servants. That reason does not support this action, for here the defendant employed a responsible citizen able to respond to the action himself.   Unless this distinction makes a difference it is difficult to discover any sense in the language of Judge Sharswood, in *Oil Company* v. *Gibson*, 63 Pa. St. 163 : "The rule of compensation," says Redfield on Railways, Vol. I, p. 506, "is immaterial ; the question is whether the work [that is, the cutting of the timber, not the construction of the road, for the trespass grew out of the collateral act of cutting the timber, and was not incident to and did not grow out of the construction], was done under the immediate control and direction of the employer, etc."

3. There is very great confusion in the books on the subject of the liability of a master for the trespass or negligence of his servant.   Most of the authorities relate to mere negligence on the part of the servant ; but the reasoning of the multitude of cases— whether on the "trespass" or the "negligence" branch of the subject, is often obscure and sometimes impossible to find.   The court

will find all the authorities collected in a note to the case of *Stone* v. *Cheshire Railroad Company,* as reported in the last volume of the American Decisions (51, p. 192), and it is useless to multiply references.

4. The court below was misled by the case of *Stone* v. *Codman,* which is referred to in Wood's Master and Servant 628, particularly from the supposed similarity in the mode of compensation. That case, however, may be put in the *nuisance* catalogue of the decisions. If my client had been sued *for damages* to plaintiff's lands from the improper construction of a ditch or sewer by Kamper on the company's right of way, whereby the plaintiff's lands were flooded, *Stone* v. *Codman* would be applicable. It is under the rule that the law requires every man so to use his property as not to cause injury to his neighbors that the defendant was held liable in *Stone* v. *Codman.*

5. The trespass was as much outside of the scope of Kamper's employment as was the act of the engineer in ordering a stranger to couple the cars in *N. O., J. & G. N. R. R. Co.* v. *Harrison,* in 48 Miss. 112. Kamper was as independent of the company as the fireman of Shaw & Co. was in the negligent leaving of hot ashes on a vacant lot in the case of *Burke* v. *Shaw,* 59 Miss. 443. If it be contended that the railroad company is responsible because of its supervision of the work by its engineer, I cite the recent case of *Eaton* v. *European & Northern R. R. Co.,* 59 Me. (S. C., 8 Am. Rep. 430), where see the other cases on this point cited in Wood's Master and Servant 610 *et seq.*

*Dial & Witherspoon,* for the appellee.

By reference to the definition of a contractor as given in the books, it will be seen that Kamper lacks almost every characteristic while he conforms perfectly to the definition of a servant. Thompson on Negligence 899, § 22; Pierce on Railroads 286; 4 Wait's Actions and Defenses 711, 712. If these definitions are correct, then the defendant has failed to prove that Kamper was a contractor because it has failed to prove (1) he exercised an independent employment; (2) that he agreed to do a piece or job of work; (3) that he was not under the control of the defendant.

1. The defendant has produced no proof at all that Kamper was a railroad contractor by trade, that he was in that business, that he professed to do that kind of work, but, on the contrary, he was proved to be one of the wealthy citizens of Clark County, and, in fact, he is only a merchant and farmer of that county. And if John Kamper sustained to the defendant the relation of an independent contractor, he undertook to accomplish for the defendant a certain result, namely the construction of their roadbed, when, so far as the proof goes, neither his business habits and railroad experience gave him any assurance that he would be able to meet that obligation. If such was his undertaking, then, to say the least of it, it was as hazardous as it would be for a lawyer to run a store or for a shoemaker to make a painting. The fact that Kamper did not enter into this contract in the exercise of an independent employment is conclusive evidence that he did not 'intend to assume to the defendant the relation of independent contractor. *Cunningham* v. *Int. R. R. Co.*, 32 Am. Rep. 634; *Lessengut* v. *Posey*, 33 Am. Rep. 101 ; *Riley* v. *State Line Steamship Co.*, 29 Am. Rep. 350 ; *Logansport* v. *Dick*, 36 Am. Rep. 174; *McCarthy* v. *Second Parish of Portland*, Ib. 320; *Milligan* v. *Wedge*, 12 Ad. & El. 737; *Wood* v. *Cobb*, 13 Allen 58 ; *Devlin* v. *Smith*, 42 Am. Rep. 311; *King* v. *N. Y. Cent. & H. R. R. R. Co.*, 23 Am. Rep. 37 ; *Harrison* v. *Collins*, 27 Am. Rep. 700. In all of the above cited cases the employe, having entered into the contract in the exercise of an independent employment, was presumed to understand how to accomplish the desired results better than the employer, and hence, in the absence of express stipulations to the contrary, it is uniformly held that the party to the contract who knows the least about it is under the control of the other party.

2. In the second place, the defendant has failed to prove that Kamper is a contractor, because it has failed to prove that he had obligated himself to accomplish a job of work. In one sense a servant's contract is to do a piece of work. In this case it was necessary that the contract of service should describe the work about which the service was to be rendered, namely, the work left unfinished by Mulholland, otherwise Kamper could not have

known what to work on ; and as the parties desired, as master and servant may desire, that the relation should continue until all the work was done, and as that period was of course uncertain, the contract provides for the completion of the work.   But the distinction between the obligation of the servant and that of the contractor is that the former is only to render the services, while the latter is to produce the result directly which the services of the former is intended to secure.

3. In the third place, the defendant has failed to show that Kamper was a contractor, because it has failed to prove that he was not under the control of the defendant.   And here lies 'the principal difference between a servant and a contractor.   4 Wait's Actions and Defenses 391 ; Wood's Master and Servant 2, 5, 37 ; Thompson on Negligence 892.   On this point we cite the following cases : *Samuelson* v. *C. I. M. Co.*, 43 Am. Rep. 456 ; *E.* v. *E. & N. R. R. Co.*, 8 Am. Rep. 430 ; *Wright* v. *Holbrook,* 13 Am. Rep. 12; *King* v. *N. Y. C. & H. R. R. R. Co.*, 23 Am. Rep. 37; *Palmer* v. *City of Lincoln,* 25 Am. Rep. 477; *Harrison* v. *Collins,* 27 Am. Rep. 700.

*S. A. Witherspoon* also made an oral argument.


Campbell, C. J., delivered the opinion of the court.

The important question in this case is, whether Kamper was the servant of the appellant or an independent contractor.   If he was a mere employe and servant, the appellant was liable for his wrongful act in taking trees from the land of the appellee.   If he was a contractor engaged in his own business under the contract and pursuing his own methods in procuring the materials he was to furnish, the appellant was not responsible for his acts.   The evidence contained in the record makes it very doubtful what was the relation sustained by Kamper to the appellant.   That Mulholland was an independent contractor is conceded.   The contract with Kamper was that he should complete the job which Mulholland had and was to be paid for it what the materials and labor to be procured and furnished by him should cost and ten per cent. additional to that for his compensation.   The court instructed the jury

that this contract made Kamper the agent of the appellant, and made it responsible for his wrongful act in getting trees from the land of the appellee. This was in effect to determine that the mere mode of payment is the true criterion by which to fix the character of one as an employe or contractor, which is not correct. The mode of payment is a circumstance of much weight in solving the question, but it is not decisive and should not have been made so. Mr. Kamper may have been the agent of the appellant through whom it purchased and paid for materials and labor to carry on its work of. constructing the trestles, and it may consequently be liable for his acts in the conduct of its business, but that does not appear sufficiently to enable us to say that he was such agent. Certain it is, that the mere manner of compensating him for his connection with the work is not decisive of his relation to the appellant. If Kamper was engaged as the mere instrument through whom the appellant was to procure materials and labor to be paid for by the company as the expenditure was made in its behalf by Kamper; in other words, if he was the disbursing agent of the appellant engaged to get materials and labor for it, and to be paid for his services a compensation measured by his disbursement for the company, he was its agent and it is responsible for his acts as such. There are some facts in evidence suggestive that this may have been the case, but they are too meagre to authorize a conclusion. It is shown that the appellant had a " timekeeper " in the person of one who took notice of those who labored at the work under Kamper's employment, and gave laborers certificates showing the time for which they labored so that they could get their pay, but this may have been a proper precaution by the appellant against being required by Kamper to pay for more labor than was performed, and it is not shown whether Kamper or the appellant paid the laborers. If their names were on the pay-roll of the appellant, and they were in fact employes of the appellant, and its time-keeper gave them certificates to enable them to get pay from the appellant, and it was their paymaster, and Kamper was merely the instrument of engaging them for the company, this would fix his relation to the company as its mere servant.

We strongly suspect that Kamper was the servant of the appellant and not an independent contractor, and would not disturb the verdict but for the fact that the court erred in directing the jury, and the evidence is not full and satisfactory enough to authorize an affirmance of the judgment notwithstanding the error of law.

In another trial a full investigation may be had of the contract and course of dealing between the appellant and Kamper which should leave no doubt of the precise character of the relation between them.

*Reversed and remanded.*