ROBERT BEVERIDGE, Respondent,

*vs.*

JOHN D. WELCH and JOHN L. LEWIS, Appellants.

APPEAL FROM THE DANE CIRCUIT COURT.

Where the officer acts in good faith, and with proper care and diligence, but takes the property of a stranger to his execution, the rule of damages in an action against him for such taking and detention is interest on the value of the goods from the time of the taking until restitution, and reasonable compensation for the depreciation in value (if any there be) together with expense in replacing them.

In such a case, the jury, in estimating damages, cannot consider damage to plaintiff's character, or injury or loss in consequence of interruption to business.

When a verdict is unsupported by the evidence, it is the duty of the court to set it aside; and a refusal to do so, is a good ground of error.

This was an action for the claim and delivery of personal property, brought by the respondent in the circuit court of Dane county, to recover possession of certain goods and chattels alleged to have been wrongfully taken and detained by the defendants, and for damages for such taking and detention.

The complaint was in the usual form; and the defence set up by the defendants was, that they had taken and then held the said goods and chattels as sheriff and deputy sheriff respectively, under and by virtue of certain executions against Henry W. Yager, Wandel Yager and Hiram Hiestand, issued upon judgments against the last named persons, as the property of the said Yagers, averring the title of the said property to be in the said Yagers. The answer denied the material allegations in the complaint; denied that the goods were the property of the plaintiff, &c., &c., &c.

The cause was tried at the December term, 1858, of the Dane circuit, before a jury. Testimony was introduced by the plaintiff to show the title of the property to be in him at the time of the levy. His title was derived from the Yagers, and a large amount of evidence was produced by the defendants to establish the fact that the transfer and conveyance of the property by the Yagers to the plaintiff was made to hinder and delay the creditors of the former. The weight of this evidence is alluded to in the opinion of the court, and need not be stated here, as the principal question determined refers to the rule of damages, as laid down in the charge of the court, and the evidence relating thereto, all of which are set forth in the opinion of the court herein.

After the evidence had been closed, the judge charged the jury as follows:

"This is an action brought by the plaintiff against the defendants to recover possession of personal property alleged by the plaintiff to have been his, and to have been wrongfully taken and detained by the defendants. On the part of the defendants, the taking and detention of the property is not denied; but the ownership of the plaintiff of the goods is denied, and it is insisted by them that the property in question was the property of one Henry W. Yager and Wandel Yager, from whom the plaintiff claims title by purchase. The defendants insist that the sale from the Yagers to the plaintiff was fraudulent, because they allege that it was made for the purpose of hindering, delaying and defrauding the creditors of the Yagers, and justify the taking of the property upon and to satisfy two executions, which they allege were issued upon two judgments, rendered in the circuit court of the county of Dane in favor of Messrs. Abbee & Colt and against the Yagers. Fraud vitiates and avoids all contracts in respect to those persons or parties upon whom it is practiced. The law looks upon fraud with abhorrence, and very justly visits

upon every person guilty of it its penalty of depriving him of any benefit or advantage of the contract or agreement infected by it. It is provided by our statute that "all deeds of gift, all conveyances and all transfers or assignments, verbal or written, of goods, chattels, or things in action, made in trust for the use of the person making the same, shall be void as against the creditors existing or subsequent of such person;" and further, it is provided by statute "that every conveyance or assignment, in writing or otherwise, of any estate or interest in lands. or in goods in action, or of any rents or profits thereof, made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suits commenced, decrees or judgments suffered with the like intent as against the persons so hindered, delayed, or defrauded, shall be void." Now to apply this law to the facts in this case, if from the testimony in this cause you find that the judgments were rendered in favor of Abbee & Colt, and against the Yagers, and that executions upon such judgmeuts were issued and placed in the hands of the defendant, John L. Lewis, as deputy sheriff, to be served and returned, and that Lewis, upon and by virtue thereof, levied upon the property in question as the property of the Yagers to satisfy the same; and further, that the plaintiff held the property by virtue of a sale or transfer from the Yagers to him, and that such sale was made by the Yagers to him in trust for the use of the Yagers, or to hold the same upon some secret trust or confidence for their benefit, to which trust or confidence the plaintiff was privy or party, if you find that such sale was made with the intent on the part of the Yagers to hinder, delay or defraud Messrs. Abbee & Colt, or any of their other creditors, in the collection or enforcement of their debts or demands, to which intent the plaintiff was privy, or of which he had knowledge or notice at or before the sale or

transfer, then your verdict will be for the defendants, for in such case as to Messrs. Abbee & Colt, under whose judgments and executions the defendants claim to justify the sale or transfer from the Yagers to Beveridge, was fraudulent and void, and that, without regard to the consideration which passed from the plaintiff to the Yagers for the goods; for, in such case, if the plaintiff had paid them in cash on the day of sale every dollar which the goods were worth, it would not aid the contract, or render valid a contract thus tinctured with fraud. And in such a case, it makes no difference which of the several facts which the law declares avoids the contract the jury find to have been proven, whether it be that the sale or transfer was for the secret use or benefit of sellers, or with intent to hinder, delay, or to defraud their creditors. Either one of these facts are sufficient to avoid it.

"Upon this branch of the case the question for you to consider is, was the sale and transfer from the Yagers to the plaintiff made, on their part, for either of these purposes, intents, or ends, and if so, was the plaintiff privy to such purposes, intents, or ends, or had the plaintiff knowledge or notice of such purposes, intents or ends; if yea, the sale was void, regardless of what or how much he paid the Yagers for them. In deciding these propositions you are to consider all the circumstances of this case, as detailed to you in evidence, and you are to decide them solely upon the evidence given you in court in this case. You are not to travel out of record or evidence, to speculate upon or look to the consequences of your verdict to either the one or the other of the parties to this suit, or any body else. You will take into consideration the circumstances, position, and business of the Yagers, and likewise those of the plaintiff, his relations to the Yagers, his means and opportunity of knowing their business relations, character, pecuniary liabilities and standing, his statements in relation to the transaction, the appearance, character and

credit of the witnesses sworn before you, their manner of giving testimony, and the reasonableness of their statements. All these things will be carefully weighed and considered by you.

If you find from the evidence that the sale from the Yagers to the plaintiff was not followed by an actual and continued change of possession, then the sale in law is presumed to be fraudulent and void as against the creditors of the Yagers, and it is incumbent on Beveridge, the plaintiff, to show that it was made in good faith. But if you find that the sale or transfer was accompanied by an actual and continued change of possession, then the burden of proving the fraud or the circumstances which avoid the sale, is upon the party seeking to avoid the sale, which in this case is the creditors of the Yagers, or what is the same thing, the defendants in this action, who justify under them.

Fraud, from its very nature, is seldom susceptible of direct and positive proof, but must be gathered from the circumstances, from the acts and conduct of parties as indicative of their intent. Fraud, in the law, is never to be presumed, but must be established by proof. Counsel in this case, to say the least, have very erroneously intimated that the doctrine of this court was, that fraud was to be presumed. I have not intentionally given expression to any such opinion, nor do I entertain it. Finally, gentlemen, permit me to say that your duty in this as in every other case, is a simple and plain though a responsible one. You in this, as in every other case, are to turn your eyes from the effects of your verdict and decide it upon the law and the evidence, as you would do in any other case, as you would in an action upon a promissory note. Your duty here is to say what the truth is of the matters submitted to you by the evidence, and certainly in elucidating and determining that, it can make but little difference who the parties are who are effected by the verdict, whether they reside in New York or Wisconsin, or whether they be one

person or another. You know no distinction of persons. In courts every man is measured by the standard of his own conduct. Jurors in the administration of justice, exercise an important office, and if with them there is any one thing lacking more than another it is, perhaps, a manly confidence in themselves and independence in the decision of questions which come before them, regardless of consequences and the influenced opinions of others. This is no criminal action, but simply a civil suit, and in passing upon it, I trust you will decide it impartially and independently, and when you have done that, be your verdict what it may, you need not fear that your slumbers in the future will be less quiet or easy than they would have been if you had never sat upon this case. If you find for the plaintiff, you will find that he is entitled to the possession of the property described in the complaint, and its value, assess for him such a sum for damages as you find from the evidence he sustained in consequence of the taking of the goods on the 11th day of January, 1858, and the detaining of them until the 23d day of January, 1858, the time when they were taken into his possession by virtue of a writ issued in this action. If you find for the defendants, you will find that they did not unlawfully take or detain the property, and are entitled to its possession and its value, and assess the damages which they have sustained by reason of the taking of the property from them in this suit on the 23d day of January last, and the rule of damages in such case is legal interest on the value of the goods from that day to the time of the finding of your verdict.

Plaintiffs excepted to the charge generally.

The jury returned the following verdict:

" 1. That the goods and chattels mentioned in the complaint of the plaintiffs herein, belonged to said plaintiff at the time of the commencement of this suit, and that said plaintiff was then and still is entitled to the possession thereof.

2. That at the time when said goods and chattels were taken by said defendants from said plaintiff, they were worth the sum of six thousand ($6,000) dollars.

3. That by reason of said wrongful taking of said goods, and the detention of the same by said defendants, the said plaintiff has sustained damage in the sum of ($500,) five hundred dollars."

The defendants thereupon obtained an order to stay proceedings, also an order to show cause why the verdict should not be set aside and a new trial ordered, on motion of defendants' counsel for the following reasons to wit:

1. Because the judge misdirected the jury in his charge as to the verdict they should bring in if they found for the plaintiff, as to the damages "in consequence of the taking of the goods on the 11th day of January, 1858, and the detaining of them until the 23d day of January, 1858," the return of the officer upon the execution given in evidence upon the trial showing that said goods were levied upon and taken by said defendants on the 15th day of January, A. D. 1858.

2. Because the damages awarded by the verdict of the jury in said action to the plaintiff are excessive.

3. Because the said verdict was against the law and evidence in said cause.

4. Because the said verdict is in all respects illegal, informal, and insufficient."

On the hearing of this application or order, the court refused to set aside said verdict, and award a new trial, assigning as a reason that although, if the said court had had the decision of cause, he should have come to a different conclusion than did the jury, in said cause; yet, as they had passed upon the issue, he did not feel called upon to disturb their verdict. From which order last named the defendants appealed.

*D. R. Coit* for the appellants, insisted that the finding of
the jury as to the question of fraud was so entirely against
the evidence that it was an abuse of discretion on the part of
the judge to refuse a new trial; and to this end reviewed the
evdence given on the trial:

2. This court is not bound in deciding upon appeals from
orders refusing or granting a new trial, by the old rule of prac-
tice, that it could not interfere in cases of this nature, except
where there had been an abuse of discretion by the inferior
court. Subdivision 3, of § 10, of chap. 139, of Revised Stat-
utes, gives a right of appeal to this court, from orders grant-
ing or refusing a new trial. It is difficult to perceive the wis-
dom of this provision, if this court is only to have authority
to reverse such *an* order, in some extraordinary case of abuse
of discretion, on the part of the court below. The appellants
claim that this provision confers upon this court the authority
to review the decision of the court below, to consider the evi-
dence upon which the verdict was rendered, and if they
think that the court below erred in refusing a new trial, to re-
verse such order. *Chamberlain vs. Mil. & Miss. R. R. Co.
Ante.*

3. The damages were excessive. This is not a case for
exemplary damages.

*George B. Smith* for the respondent.

1. This court will not reverse the judgments of inferior
courts for immaterial errors. *Dickerson vs. Morin,* 1 Wis. R.,
243 ; *Cooper vs. Blood,* 2 Wis. R., 62.

The question of damage was purely a question of fact for
the jury, and the court will not disturb verdicts for excessive
damages, where the verdict is supported by any proof. But
here the damages are reasonable. There were about $6,000
worth of goods, such as are usually kept in a country store ;
they were taken down, overhauled, and much injured, and

the plaintiff kept out of possession twelve days. In the meantime his customers had fallen off, and he thereby sustained much injury in his business.

The question submitted to the jury was, whether the sale from the Yagers to Beveridge was fraudulent or not. The jury found it not fraudulent; all the positive evidence is in accordance with the finding, the vague suspicions all on the other side. Courts never disturb verdicts under such circumstances. This doctrine is too well settled to require authorities.

A motion for a new trial is addressed to the sound legal discretion of the court, and the Supreme court will not interfere unless there has been a manifest abuse of discretion. *Ford vs. Ford*, 3 Wis., 399 ; *State vs. Lamont*, 2 Wis., 437 ; *Moss vs. Vroman*, 5 Wis.

The rule of law in relation to the reviewing of the orders of inferior courts, granting or refusing a new trial is not changed by the code. *Morgan vs. Bruce*, 1 Code Rep. N. S., 369.


*By the Court*, Cole, J. We cannot understand upon what principle the verdict and judgment in this case can be sustained.

The jury gave the respondent five hundred dollars damages for the wrongful taking and detention of the goods by the sheriff, who had them in his possession for a period not to exceed sixteen days. The stock of merchandise taken was such as is usually kept in a country dry goods store, and was valued by the jury at six thousand dollars. The goods were not removed from the building, were carefully handled and placed in a pile in the store, where they remained until the respondent replevied them, or obtained possession of them by commencing this action. The respondent was deprived of

the use and control of his goods for sixteen days, and, according to the most favorable rule, the measure of damages in this case would be the legal interest upon the value of the property while it was out of his possession, and compensation for any depreciation in the value of the goods replevied, and the necessary expense of placing the goods in their proper place. *Graves vs. Sittig*, 5 Wis. R., 219 ; *Morris vs. Baker et al.*, id., 389 ; *Gordon vs. Jenning*, 16 Mass., 465.

Now with the exception of the testimony of George Fulton, we cannot discover any evidence tending to show that the goods deteriorated or altered in value while in the possesion of the Sheriff. Fulton swears that the damage was $2,500—being as he states, $1,000 damage to character, and $1,500 to goods, trade, &c. It is very evident that this was not a case for exemplary or punitory damages. There is not a particle of proof going to show that the sheriff acted maliciously or vexatiously in making the levy. He acted with forbearance and discretion in the strict line of his duty in enforcing a legal process without abusing or perverting its true object. He made a levy upon property which he undoubtedly supposed really belonged to the defendants in execution, the Yagers. The respondent was put to trouble in recovering possession of the goods, but to no more than what must necessarily happen in all judicial proceedings properly instituted to try the contested rights of property. As the respondent recovered possession of his goods by his writ, we cannot see why he is entitled to receive more than interest on the value of his property from the time it was taken from him until its restitution, and reasonable compensation for the depreciation in its value, if any such there was. This is generally considered the extent of the damages sustained, and is deemed legal compensation. It is not a case in which the jury were authorized to take into consideration damages to the respondent's character, or an injury sustained in consequence of in-

terruption to his trade, &c. We express no opinion as to the validity of the sale made by the Yagers to the respondent. The jury from the evidence were led to the conclusion that it was *bona fide*, and not tainted with fraud. But that sale was not so free from suspicious circumstances as to convince all the world that it was a fair transaction. The sheriff might well have concluded that it was a mere sham, resorted to for the purpose of keeping the property beyond the reach of Yager's creditors.

It was suggested by the counsel for the respondent that the question of damages was one purely for the jury to determine, and that courts will not disturb verdicts upon the ground that the damages are excessive.

That is very true, but it has no application to this case for the reason that this is not one in which the jury can give excessive or speculative damages. The verdict is entirely unsupported by every fact and circumstance in the case, and it should have been set aside by the circuit court. The refusal of that court to set aside the verdict we consider such an abuse of its discretion as to authorize the interference of this court.

The judgment of the circuit court is therefore reversed and a new trial ordered.