## S. A. WHITE v. C. BARNES.

*Assault—Action for Damages—Judge's Charge.*

1. Where, in an action for assault, there was no material conflict of testimony, and that of the defendant put the matter in the most favorable light for himself, it was not error for the Judge to charge the jury that if they believed the defendant's statement as to the facts (which was equivalent to saying that if they believed the evidence in the most favorable light in which it could be considered for the defendant) the plaintiff was entitled to some damages.

2. In such action, where there was no evidence showing that the plaintiff engaged in or showed a willingness to fight, defendant cannot complain of an instruction "that plaintiff is entitled to recover, even though he entered the fight willingly."

3. Exemplary damages may, in proper cases, be awarded in this State for injuries; and, granting that plaintiff was a trespasser on defendant's premises at the time of the first assault on him, that fact would not debar him from recovering exemplary damages for a subsequent assault by defendant, who, after his arrest, followed the plaintiff fifteen feet and struck plaintiff a violent blow, while the latter was held by a policeman and unable to defend himself.

CIVIL ACTION to recover damages for an assault and battery, tried at February Term, 1892, of WILSON Superior Court, before *Bryan, J.,* and a jury.

By consent, the following issues were submitted to the jury:

"1. Did the defendant unlawfully assault the plaintiff?

"2. What damage, if any, is plaintiff entitled to recover?"

To the first issue the response was "Yes," and to the second, "Five hundred dollars."

J. A. Privett, policeman, testified: "I was on the street in Wilson in May, 1890, when defendant and his son came by, and defendant said, 'Come on.' He kept right on down the street and I followed him. We went to gin-house; saw a wagon backed up there, and White had been loading it.

Barnes asked White what he meant by getting things out; said they were his until freight was paid. White said, 'Freight has been paid.' Barnes said, 'You're a liar,' and Barnes and son both struck White, one over the eye, the other on the breast, and White took out his knife but did not open it. I took hold of White and took him before me, with his hands pressed down to his sides behind, and had carried him about half way across the street, at least ten feet from Barnes, when Barnes followed and struck White on the nose with a stick. I had White when Barnes struck him. White was trying to get away, but no more so than is usual. Stick was about two feet long. It looked like a pretty severe lick. I took White over to Finch's and set him down; he was bleeding profusely; this was in the streets of Wilson and several people were around."

*Cross-examination.*—" Barnes said it was strange, or ridiculous, that White should go there to take the things. When we got there White had some things out of the house. The door was open. White said they were his things; that he did not owe Barnes anything. Barnes first struck White with his fist; White did not strike Barnes at all; I took hold of White because he had got his knife out and held it in his hands. I did not see the knife open. I thought I would take White to stop the difficulty. Have known White ever since he came here, two or three years ago, he worked like a near-sighted person."

S. A. White, plaintiff, testified: "I am the plaintiff. Mr. Barnes came down the street and spoke to me; I was moving a table; he asked me what I was going to do with it; I said it was mine. He said, 'How came it yours? It was to be mine until freight was paid.' I said, 'The freight is paid.' He said, 'You are a liar,' and he and his son both struck me. I then got out my knife, but did not open it. Privett then seized me from behind and pressed my hands down by my

sides behind and Barnes, the defendant, followed and struck me a blow on the nose with a stick; damaged my eye-sight; I have always been near-sighted, but worse since the blow. I have suffered great pain since the blow. It gives me great trouble. I was senseless for awhile after the blow. I bled profusely. The next thing I knew after the blow I was in Dr. Anderson's office. It was eight or nine months before I could stand the sun. My nose was corked to stop the bleeding. My business is the manufacture of tobacco. I was at that time farming, but was not able after the blow to stand the sun. Have now recovered. My services were worth fifteen dollars per month. I did not tell Barnes he was a liar. Did not open my knife, and had no intention of opening it."

*Cross-examination.*—"I came to Wilson in 1889. Brought a couple of negroes with me. Came to manufacture tobacco; machinery was shipped in name of Mr. Barnes; fifty-three dollars freight was due on it; I did not tell Barnes to pay freight and hold machinery until he was repaid; machinery was taken out of depot in June; Barnes paid twenty dollars board for me. I paid him back working for him. I did not leave until Barnes said he was not going into the business; when I came back I found the house locked up with different lock; I asked Barnes for the keys; he refused; I then went to the house and opened the window and went in. I had rented the house myself and it was mine, and I had a right to go in it. I had a wagon there and some things had been put on it. Barnes and his son and Privett came up. Barnes said, 'What are you doing with that table?' I said, 'It is mine'; he said, 'How came it yours?' I said, 'I brought it here.'"

There was testimony by other witnesses for the plaintiff corroborating him and showing the aggravated nature of the assault and serious character of the wound inflicted.

The defendant testified as follows: "Am defendant. In June, 1870, these fixtures were shipped to me from Rocky Mount; they staid in warehouse some time; I was afraid the whole thing was not worth fifty-four dollars. White opened the window of the house and went in and took out things; I took things by claim and delivery; he took them again; he took some things that were mine; I called White a liar; he said I was another, and I struck him; then he took out his knife, and my son struck him; then the policeman took him and started across the street with him. When he had gotten some fifteen feet away some one called out that White had his knife out, and I then got a stick and struck him with it. I told White before this that if he had anything in the house to get key and get it out. I do not know that he opened the knife; I think that before this I had been very kind to the old man."

*Cross-examination.*—" I have no harm against him; I went down there to arrest him and I took the policeman along for that purpose. When he took out his knife, my son said, ' Stand back; I'll attend to him.' I don't know that he drew his knife on me; I struck him with a little hoop; I have never offered to pay his doctor's bill; I have not spoken to him or showed him any kindness since I struck him. I have been indicted for fighting and convicted; I was under bond to keep the peace when I struck White. White was under arrest and in the hands of the policeman when I struck him, but he was trying to get away from the policeman. I struck him because some one said he had a knife and he was about to get away from the policeman. I took out claim and delivery before the fight. (He is here shown his claim and delivery papers, and asked if they do not show that they were dated after the fight, which he admits, but says that he took them out before the fight). White and I rented the house jointly; that is, I told him to

rent the house and I would stand his security. I thought White had surrendered possession to me."

*Re-direct.*—"I was tried for this assault."

James D. Barnes, son of defendant, testified as follows: "Am son of defendant; went down the street with Privett and father; I had told father that White had broken into house and was taking things out; the table was made there; White said it was his table; father said he was a liar, and struck him. I struck him one lick; Privett took White across street; some one said, 'He has a knife'; father picked up stick, followed and struck White across nose; stick was willow and weighed eight ounces. We were arrested and carried up town."

*Cross-examination.*—"Father got stick off ground; White was trying to open his knife when I struck."

The plaintiff requested the Court, in writing, to charge the jury—

1. That if the jury believe the defendant's statement as to the facts in this case, the plaintiff is entitled to recover some damages. (Given, and defendant excepted).

2. If the jury shall believe that Barnes struck White with the stick described in the evidence and broke his nose, the plaintiff is entitled to recover, even though the jury believe that White entered into the fight willingly. *Bell v. Hansley,* 3 Jones, 131. (Given, and defendant excepted).

3. That this is an action of tort, and in such actions, if the jury believe that the act complained of was attended with circumstances of aggravation or oppression, the jury may, in their discretion, give exemplary damages. (Given, and defendant excepted).

The defendant requested his Honor to charge as follows, each of which his Honor refused, and defendant excepted:

1. If you find that Mr. White was a trespasser, that he had no right to remove the property, then in no event can

you give him more than actual damages, and the circum-
stances of aggravation and provocation on the part of Mr.
White (if such there be) are to be considered by you as
tending to reduce the actual damages to a nominal sum.

2. If you believe that at any time during the affray
Mr. White fought willingly, or made any attempt to strike
Mr. Barnes when the same was not absolutely necessary for
the protection of his person, then White can recover only
actual damages, and any circumstances of provocation or
aggravation may be considered as tending to reduce the
recovery to a nominal sum.

3. In no aspect of the case can the defendant recover
more than actual damages.

His Honor, among other things, charged the jury, "That
if they believed the evidence they would find the first issue
Yes.   In assessing damages of the plaintiff in the action,
the jury are at liberty to take into account the extent of
plaintiff's injuries so far as shown by the evidence; the
pain and suffering endured by him, if any, in consequence
of said injuries; his loss of time, and the costs of medical
attendance, and award such damages as you think right
and proper.   And if you find that the assault and battery
was maliciously, willfully and wantonly committed on the
plaintiff, and that he was seriously injured and damaged
thereby, then you are not confined to the actual damage
proved, but you may give in addition thereto such exem-
plary damages or smart money as in your judgment will
be just and proper, as a punishment to the defendant in
view of all the facts and circumstances proved on the trial.
The damages are to be fixed by the jury under all the cir-
cumstances of the case—the amount is left largely to the
common sense and discretion of the jury."

His Honor further told the jury that "an illegal act is
wanton when it is needless for any rightful purpose, without

any rightful provocation, and manifests a reckless indifference to the rights of others."

At the conclusion of the Judge's charge the defendant's counsel asked the Court orally to charge that the jury might take into consideration in mitigation of damages the fact that the defendant had been convicted and fined for the assault and battery. His Honor responded that he had already told the jury that they could consider all circumstances and facts proved by the defendant or appearing in the evidence of the plaintiff tending to mitigate the damages. The Court told the jury that they could consider the fine that defendant paid, and "to consider all the facts and circumstances."

· There was judgment according to the verdict for plaintiff, and defendant appealed.

*Messrs. G. V. Strong, F. A. Woodard* and *Battle & Mordecai*, for plaintiff.
*Messrs. Woodard & Yarborough*, for defendant (appellee).

MacRae, J. : There was no exception to the charge of his Honor upon the first issue. The testimony of all the witnesses to the assault was that after the plaintiff was being carried off by the policeman, his arms held closely to his sides from behind so as to render him powerless even to defend himself, the defendant followed him some ten or, according to defendant's own testimony, fifteen feet, and struck him in the face, inflicting very serious injury.

The contention was as to the damages upon the second issue. The first exception was to the charge that if the jury believed the defendant's statement as to the facts in this case, the plaintiff was entitled to some damages.

There was no material conflict in the testimony; that of defendant himself put the matter in the most favorable

light for him. While it has been often held that, where there is conflicting testimony, it is improper for the Court to select one of the witnesses and instruct the jury that if they believe him they will find according to the direction of the Court, this is not at variance with the common practice in the trial of criminal actions for the Judge to tell the jury that if they believed the defendant's own statement they should find him guilty; or in civil actions, where there is no conflict in the evidence, to put the case to the jury upon the admissions of a defendant in his own testimony.

We take from defendant's brief *Anderson* v. *The S. B. Co.*, 64 N. C., 399, which holds that in case there are a number of witnesses *who contradict each other*, it would be improper generally for the Court to set up one of them and instruct the jury that if they believe him they must find their verdict in a particular way; and in *Brem* v. *Allison*, 68 N. C., 412, where it is said that there may be cases where it would be proper, but generally it is safer to put the case to the jury upon all the evidence, with proper explanations. In this case his Honor said in effect that if the jury believed the evidence in the most favorable light in which it could be considered for defendant, the plaintiff was entitled to some damages, and in this we concur without hesitation.

The defendant has no right to complain of the second prayer of plaintiff which was given by his Honor to the jury, that the plaintiff was entitled to recover even though the jury believed he entered into the fight willingly; this proposition was correct in the abstract, but there was no fight, there was nothing to indicate the willingness of plaintiff to fight, unless it be the testimony of defendant, "I called White a liar, he said I was another, and I struck him. He took out his knife and my son struck him; then the policeman took him and started across the street with him. When he had gotten some fifteen feet away some one called out

that White had his knife out, and I then got a stick and struck him with it." According to all of the other witnesses testifying to the assault, the plaintiff never opened his knife.

It will be observed that the words used in the instruction that the plaintiff is entitled to recover were upon the second issue, upon which defendant contended that plaintiff was not entitled to recover damages. In the sense used they differ entirely from the same words as referred to in that line of cases where it is held that, upon issues submitted, it is not proper for the Judge to instruct the jury that the plaintiff is or is not entitled to recover, because that was not the question involved in the issue, but was for the Judge to determine upon their findings of fact in response to the issue.

The defendant's counsel in their brief earnestly contend that if the plaintiff were a trespasser and had no right to remove the property, in no event can he recover more than actual damages; indeed, that the aggravation and provocation on the part of the plaintiff should reduce it to nominal damages. But it appears by all the testimony that there was a contention between plaintiff and defendant as to the true ownership of the property, and the plaintiff at the time of the assault upon him was in possession of it. If it *had* appeared that the plaintiff was a trespasser upon defendant's property at the time of the first assault by defendant and his son, the second and subsequent violent and unprovoked blow in the face given by defendant with a stick, while plaintiff was held by the arms and unable even to defend himself, was, to say the least, "attended with circumstances of aggravation and oppression."

There is no evidence that plaintiff fought willingly or made an attempt to strike defendant. We cannot, at this late day, open the question as to the right to recover exem-

plary damages in North Carolina in proper cases; it has been too long settled for us now to be called upon to cite authorities or enter upon a discussion of the reason upon which the principle is based.

We are much inclined to doubt whether the jury intended to give exemplary damages in the present case; their moderation would seem to have kept them within the strict bounds of compensation for the injuries inflicted.

We think his Honor fairly instructed the jury; it was not practicable for him to array the testimony and present it with the law bearing upon it in its different aspects, for it was all one way: it disclosed a violent assault without provocation. At this distance, and by the light of the testimony, it seems to us that the officer of the law arrested the wrong man, deprived him of his first right of self-defence, and permitted the defendant to strike "the old man" in the face with a stick while he was wrongfully held in custody.

What we have said disposes of all the exceptions.

No Error.