FRANK HANSLEY v. JAMESVILLE AND WASHINGTON RAILROAD COMPANY.

*Action for Damages—Common Carrier—Excursion Ticket.— Failure to Transport Passenger—Inadequate Equipment— Punitive Damages.*

1. The contract of carriage by a common carrier begins when a passenger comes upon the carrier's premises or conveyance with a purpose of buying a ticket within a reasonable time, or after having purchased a ticket, and the relation once constituted continues until the journey contracted for is concluded, and the passenger has left or has had reasonable time to leave such premises.

2. The amount recoverable for a breach of a contract of carriage is limited to the damage supposed to have been in contemplation of the parties and actually caused by such breach, and the measure of damage is ordinarily not materially different whether the defendant fails to comply with the contract through inability or wilfully disregards it.

3. The rule is that when a passenger is delayed or carried contrary to the agreement, so as to lead to a failure to accomplish the object of the trip, he is entitled to recover, in all cases, at least the sum paid for the ticket, with interest thereon, together with compensation for the whole of the time lost in the trip and, in some instances, the reasonable cost of reaching his destination by means of some other conveyance.

4. Such rule obtains whether the passenger sues for a breach of the contract or in tort for the disregard of the duty of the carrier to the public, unless it appear that, in addition to the expense, loss of time, etc., some personal injury accrues directly from the wilful failure to transport him according to the schedule time, or some indignity is sustained by such failure.

5. Punitive damages will not be awarded against a railroad company where, by reason of defective equipments, it failed to carry a person, to whom it had sold an excursion ticket, back to his starting point, when the only injuries complained of were inconvenience, delay and disappointment, and there was no proof of bad motive on the part of the defendant. (*Purcell* v. *Railroad*, 108 N. C., 414, overruled.)

CLARK, J., dissents, *arguendo*.

Action for damages, tried before *Graves, J.*, and a jury, at _____ Term, 1893, of Beaufort Superior Court. From judgment for plaintiff, defendant appealed. The facts appear in the opinion.

*Mr. Chas. F. Warren*, for plaintiff.
*Messrs. J. H. Small* and *W. B. Rodman*, for defendant (appellant).

AVERY, J.: As this controversy grows out of an admitted failure on the part of the railway company to perform its agreement with a passenger to carry him to and from a particular place within a given time, and involves especially the question whether the testimony warranted the Court in instructing the jury that they were at liberty to add exemplary damages to the estimated loss actually sustained by reason of the delay, it is not improper to state in the outset several leading principles of the law governing the relative rights and duties of carriers and passengers, and the rules generally applicable in the assessment of damages in such cases.

The contract of carriage begins when the passenger comes

upon the carrier's premises or upon its means of conveyance with a purpose of purchasing a ticket within a reasonable time, or after having purchased a ticket. The relation once constituted continues until the journey, expressly or impliedly contracted for, has been concluded, and the passenger has left the carrier's premises or has been allowed a reasonable time to leave such premises. 2 Am. and Eug. Enc., pp. 742 to 745. There is always on the creation of a relation an agreement, express or implied, and a legal obligation to perform the stipulation of the contract by transporting the passenger in accordance with the published schedule, or within a reasonable time. Hutchison on Carriers, sec. 603 *et seq.*

If an action be brought for a breach of this contract, the amount recovered is limited (with the single exception of a breach of marriage contract, say many law writers) to damage supposed to have been in contemplation of the parties and actually caused by such breach. The measure of damage is ordinarily not materially different, whether the defendant fails to comply with his contract through inability or wilfully disregards it. We shall have occasion presently to advert to the distinction between actions of tort founded upon a wilful omission of a common law duty, but involving at the same time a breach of contract, and such as are brought to obtain redress for the intentional failure or absolute refusal to comply with the terms of an agreement.

Actionable negligence must be the proximate cause of a legal injury and damage. It may be—

1. A pure tort.

2. An inadvertent breach of contract, which cannot be regarded as independent of the contract, and tortious.

3. A breach of contract in the nature of tort, and which may be treated as such, independent of the contract. 5 Am. and Eng. Enc., *supra.*

Treating of torts of this third class, Bishop, Non-contract Law, sec. 74, says: " Because a common carrier, whether of

goods or passengers, is a sort of public servant, the law imposes its duties upon him, a breach whereof is a tort, although there is a contract which is violated by the same act." Whenever there is a public employment from which arises a common law duty, an action for a breach of such duty may be brought in tort. *Express Co.* v. *McVeigh*, 20 Gratt., 264; *Clark* v. *Railroad*, 64 Mo., 440; Sherman and R. on Neg., sec. 22.

In actions *ex delicto* the motive of the defendant becomes material. 1 Sutherland on Damages, sec. 373. If a tort is committed through mistake, ignorance or mere negligence, the damages are limited to the actual injury received. 5 Am. and Eng. Enc., page 21, and note 3. But where there is an element of fraud, malice, gross negligence, insult, or other cause of aggravation, in the act causing the injury, punitive damages are allowed, said the Court in *Holmes* v. *Railroad*, 94 N. C., 318. But the statement of the rule was modified by omission of the terms " gross negligence " in the subsequent cases of *Rose* v. *Railroad*, 106 N. C., 168, and *Tomlinson* v. *Railroad*, 107 N. C., 327.

The modification mentioned was due to the fact that this Court meantime had said in *McAdoo* v. *Railroad*, 105 N. C., 140, that " the most learned and discriminating text-writers concur in the opinion that in actions arising *ex delicto* there can be no degree of negligence that can be described by the word ' gross ' alone. But where an injury is due and can be traced directly to the wilful act of another, he is not absolved from liability to the injured party.    *    *    *    Hence, we often find in opinions which have emanated from this and other Courts the expression ' gross and wanton negligence,' but the former word is never used to describe a degree of carelessness that will excuse the fault of the plaintiff in exposing himself to danger, except when it is improperly held synonymous with wilful, malicious or fraudulent."

Thompson, in his work on Carriers and Passengers, page

573, sec. 27, says: "Such damages are termed exemplary, punitive or vindictive—sometimes called smart-money—and are only awarded in cases where there is an element of either fraud, malice, such a degree of negligence as indicates a reckless indifference to consequences, oppression, insult, rudeness, caprice, wilfulness, or other causes of aggravation, in the act of omission causing the injury. * * * Some of the authorities include 'gross negligence' as one of the elements which entitles the plaintiff to exemplary damages. But the better view is given in an opinion delivered in a recent case in the Supreme Court of the United States. In reviewing that case Mr. Justice DAVIS, who delivered the opinion said: "Some of the highest English Courts have come to the conclusion that there is no intelligible distinction between ordinary and gross negligence." *Milwaukee Railroad Company* v. *Ames*, 91 U. S., 489.

The general rule, therefore, is that where the violation of duty makes the defendant a wrongdoer, only compensatory damages are allowed, while proof of a wrongful purpose may take a case out of it, as an exceptional one. Fraud, malice or insult imply from their very definitions the existence of an intent on the part of the wrongdoer to cheat, to injure through hatred, or to oppress. Where even the rightful ejection of a passenger is accompanied with undue force, " rudeness, recklessness or other wilful wrong (*Rose* v. *Railroad, supra*), the law assumes the existence of the bad motive, on the principle applicable in ordinary cases of assault, that every person is presumed to intend the natural consequences of his own act. Tomlinson's case, *supra*. It must be noted that Mr. Thompson carefully excludes " gross negligence " as an element warranting allowance of such damages, and substitutes the expression " such a degree of negligence as indicates a reckless indifference to consequences," which is equivalent to wanton carelessness. Yet the learned Justice who wrote the opinion in Holmes' case, *supra*, inadvertently

cited that author (94 N. C., page 323) in support of his statement of the doctrine. In the consideration of the case at bar, therefore, it is proper to dismiss from our minds the idea that the weight of authority in our own Court, or elsewhere, leaves us at liberty to hold that punitive damages may be awarded in every instance where a Court can, by giving a very comprehensive meaning to that undefined and improper term (gross negligence) as descriptive of the degree of carelessness, classify a case as an exceptional one, taken out of the general rule by the evidence of intent.

Counsel for the defendant asked the Court on the trial of the case at bar to charge as follows:

"1. That upon the complaint, and the facts as stated in the complaint, in the absence of any allegations of wilful or gross negligence, the plaintiff is not entitled to recover punitive damages.

"2. Taking the entire evidence in view, the plaintiff is not entitled to punitive damages.

"4. That if the plaintiff knew, when he contracted for transportation to Jamesville and return, of the general character, quality and condition of the defendant's equipment, and the general condition of its road, plaintiff would be entitled to recover no damages, except the cost of transportation back to Washington.

"5. That the cause of action being laid in tort, the plaintiff cannot recover damages for a breach of contract of carriage in this action.

"6. That, upon the entire evidence, the jury should respond to the several issues in favor of the defendant.

"7. That if the defendant was expending the entire income from its road in the maintenance of its roadway and the equipment of said road, it is not guilty of such wilful negligence as will subject it to punitive damages, but the plaintiff can only recover such actual damages as may have been proved."

The Court refused to give the instructions asked, but charged the jury, among other matters, as follows:

" 2. The plaintiff claims that he bought a ticket from Washington to Jamesville and back to Washington; that the defendant negligently failed to have a train to bring him back, and also punitive damages for the wrongful act of the defendant in failing to bring him back. He alleges that the defendant has wilfully failed and neglected its duty to the public in not properly keeping its roadbed, tracks, engines and cars in such condition as to do the business which it naturally gets, and if you are satisfied that the defendant has wilfully neglected to do this, and in consequence of this wilful negligence they failed to run the engines and cars to return the plaintiff to Washington, then he would be entitled to punitive damages, otherwise he will only be entitled to compensatory damages."

The Court also charged the jury that it was the duty of defendant to have known the condition of its road and cars, and if they found that the roadbed, track and engines of defendant were, at the time alleged, in such condition as not to render it reasonably certain, in the ordinary running of its trains, that the engine would be able to carry the trains through, etc., it would be wilful negligence, for which they might allow punitive damages.

It appeared from the testimony that the road was originally constructed for the purpose of hauling lumber, but ultimately engaged in the businsss of transporting. passengers across the intervening swamp from its northern terminus at Jamesville to its southern terminus at Washington. The roadbed had been made by driving down piles of various kinds to make a foundation for the cross-ties. In the earlier years of its operations as a carrier of passengers the company had owned two engines, one regular narrow-gauge passenger car, and one passenger car constructed out of a street car, but the latter car had become unserviceable some-

time before the injury complained of, and on extraordinary occasions a flat or box-car had to be used to accommodate passengers. The engines had become worn, and had been jolted and injured on account of the bad condition of the roadbed and the consequent jarring in passing over it. The earnings of the road had been applied exclusively to its improvement during the the whole period of its use, as a road for transporting passengers, but latterly the income had been greatly diminished and was insufficient to keep the roadbed in repair, much less to provide additional cars or engines. These are some of the facts testified to by the witnesses.

The gravamen of the complaint is that the defendant company carried the plaintiff from Washington to Jamesville November 7, 1892, but failed to furnish means of transportation, at the stipulated time, November 9, to bring him back to Washington on his return ticket.

In applying the abstract principles, which we have stated more specifically, to the case before us, we find it to be a well-settled rule that where a passenger is delayed or carried contrary to the agreement, so as to lead to a failure to accomplish the object of the trip, such person is entitled to recover in all cases at least the sum paid for the ticket, with interest thereon, together with compensation for the whole of the time lost in the trip, and in some instances the reasonable cost of reaching the objective point by means of some other conveyance. *Young* v. *Railroad,* 1 Cal., 353; *Hamlin* v. *Railroad,* 1 H. & N. Ex., 408; *Savannah, etc., Railroad* v. *Banard,* 58 Ga., 180; *Howcroft* v. *Railroad,* 8 Eng. Law and Eq. Rep., 362; *Sears* v. *Railroad,* 14 Allen (Mass.), 433; *Eddie* v. *Harris,* 78 Texas, 661; *Walsh* v. *Railway,* 42 Wis., 1.

The rule of damage just stated is to be adopted not only when the suit against the railway company is brought for, or the proof confined to, the breach of contract of carriage, but, as well, where the plaintiff elects to sue in tort and rely upon the disregard of duty on the part of the carrier as a

115—39

cause of action, unless it appear that the plaintiff has suffered, in addition to the expense, loss of time and inconvenience incident to every failure to comply with such a contract, some personal injury, of which the wilful failure to transport him according to the schedule time is a proximate cause. 5 Am. & Eng. Enc., 40; *Milwaukee* v. *Ames, supra; Railroad* v. *Sellers*, 91 Ala., 9; 3 Sutherland on Damages secs. 934 to 938; *Martin* v. *Railroad*, 32 S. C., 592; *Wilkinson* v. *Searcy*, 76 Ala., 176; Sherman & Red. on Neg., sec. 23.

In *Railroad* v. *Sellers, supra,* where the conductor carried a female passenger beyond the station to which the company had contracted to carry her, and ordered her off the train in a driving rain, with an infant in her arms, and so encumbered with baggage that she could not protect herself by using an umbrella, thereby subjecting her to exposure from which she contracted sickness that lasted for three weeks, the Court carefully, and in express terms, rested the decision that the jury might allow exemplary damages upon the ground, not of the "omission of duty" on the part of the conductor of stopping at the station, but of his wilful disregard of her comfort and health in forcing her to expose herself and her infant, instead of letting her off at a house or backing the train to the station. In discussing this doctrine, Sutherland, Vol. 3, sec. 938, says: "Where a person has bought a ticket and is carried beyond the station for which he is ticketed, without any fault on his part, he has a right of action for at least nominal damages, though he suffers no actual injury, and for such actual injury as he may in fact suffer." After laying down the foregoing as the ordinary rule, when the conductor, with a full knowledge of the destination of a passenger, merely takes him beyond that point and lets him off without circumstances of aggravation, proceeds to refer with approval to the ruling of the Court of Alabama, already cited, that there was evidence in addition that a female passenger was ordered off the train

with her infant, the circumstances attending her expulsion were evidence to be considered by the jury of wilful wrong on the part of the conductor, and consequent liability on the part of the company to punitive damages. It is an error that will lead to endless confusion to hold that "smart-money," which is allowed as a punishment to the wrong-doer, may be recovered in every case where under the common law practice an action *ex delicto* would lie. *Wannama-ker* v. *Bowes*, 32 Md., 42; *Wilkinson* v. *Searcy, supra; Phelps* v. *Owens*, 11 Cal., 22. All of the actions brought against railway companies for breach of duty arise out of tort, but it is only in those where the elements already mentioned as indicative of bad motive exist, and where, in addition, some personal injury or indignity is sustained, that the plaintiff is allowed to recover more than compensatory damages. *Morse* v. *Duncan*, 14 Fed. Rep., 396. In *Tomlinson* v. *Rail-road, supra*, the Court said: "The fact that the plaintiff was wrongfully expelled places him in no more favorable attitude, as a claimant of punitive damages, than if he had been rightfully ejected, but in an unlawful or unwarrantable manner. It is an essential prerequisite to the acquisition of the right to recover exemplary damages for wrongful expulsion of a passenger from a train, that there should be evidence of undue force, unnecessary rudeness in the application of the force or insult, malice or some wilful wrong accompanying the act of ejecting him, or causing him to leave the train." *Rose* v. *Railroad, supra*, and authorities there cited.

Justice CLARK for the Court, in *Wallace* v. *Railroad*, 104 N. C., 442, approving the rule laid down in 3 Sutherland on Damages, 261, 1st Ed., said: "Plaintiff is to have a reasonable satisfaction for loss of both bodily and mental powers, or for actual suffering both of body and mind, which are the *immediate* and necessary consequences of the injury."

"In the absence of any sufficient testimony to make the company liable for *wilful* disregard of the intestate's dan-

ger", said the Court in *Roseman* v. *Railroad*, 112 N. C., 709, " we think the Court below erred in submitting the case to the jury."

It is true that smart-money may be awarded by the jury when no actual but only nominal damage is shown, as when a conductor rightfully expels a person from a car, or the owner puts a trespasser off his premises, and either of them uses excessive force, or subjects such person to useless indignity. *Tomlinson* v. *Railroad, supra; White* v. *Barnes,* 112 N. C., 323. The allowance is made in these instances on account of the assault or rudeness. But where a trespass is committed by mistake, the case is not governed by the same principle as when a wilful assault is committed. *Beveridge* v. *Welch,* 7 Wis., 465. It is not sufficient ground for allowing punitive damages that the defendants, when they committed a trespass, had reason to believe, but did not know, that their acts were wrongful and might result in injury to plaintiff. *Inman* v. *Ball,* 65 Iowa, 543. On the other hand, a trespasser is always responsible for such actual damages as legitimately follow from his act, whether he contemplated the result or not (*Allison* v. *Chandler,* 11 Mich., 542), while one who assaults another is presumed to have intended the personal injury—that is, the consequence of committing the assault—it being a wrongful act, done purposely and without cause. *Gasty* v. *Ambs,* 28 Mo., 33; *U. S.* v. *Taylor,* 2 Sum., 586; *Causee* v. *Anders,* 4 D. & B., 240. We think that the case at bar is one of those where the plaintiff, under the common law practice, might have elected to bring his suit either for the breach of contract in failing to bring the plaintiff back on schedule time, or for the disregard of his duty to the public as a carrier, either an action of assumpsit or of trespass. But, because he chose then to sue for the tort and now to allege such facts as show an omission of duty, it does not follow that upon proof of such allegations exemplary damages will be allowed. There has been a failure to show

the sort of wilfulness that manifests its presence in malice, rudeness, violence, indignity and reckless disregard of consequences, and there is no evidence that the plaintiff suffered from sickness contracted by exposure incident to the delay, or was subjected, in consequence of the defendant's failure to furnish transportation, to any other personal injury or to indignity. If neither the intentional and wrongful expulsion of a passenger, not accompanied with undue force (Tomlinson's case, *supra*), nor the negligent carrying him beyond his destination (3 Sutherland, sec. 938), after having inspected his ticket or received it, is sufficient evidence of the wilful infliction of personal injury to warrant the allowance of punitive damages, we fail to see upon what principle we can hold a railroad company liable to be so punished because, with a full knowledge on the part of its manager that the company had but two engines, one of which was in the shop at Norfolk for repairs, it undertook to haul to Jamesville and back with the other, not then in good condition, the train on which the plaintiff and others, who had return tickets, were to be carried as passengers, because only of the delay and inconvenience incident to such detention. If the same engine, in consequence of the bad condition of the track, or the engine itself had, with the cars, been derailed, only those passengers who received bodily injury could have maintained actions against the company and have recovered, as a part of the compensation for the consequences of the accident, exemplary damages. It is not necessary to cite authority in support of the soundness of so plain a proposition, and yet if we sustain the Court below the logical result would be that a passenger who is delayed, without suffering bodily injury, by a defective engine, is entitled to smart-money, though he could not have subjected the company to such punishment had he escaped unharmed when it was derailed and upset. "Neither negligence without damage, nor damage without negligence, will constitute any cause of

action." Shearman & Red., *supra*, sections 23–25. The case of *Purcell* v. *Railroad*, 108 N. C., 414, seems to have been confidently relied on to sustain the contention of the plaintiff. The facts in that case were that the plaintiff had purchased a ticket and was waiting, at the time at which it was advertised that the train would stop, at the station where he was to embark, but the cars being overloaded because a circus was to give an exhibition at the station to which the passenger was destined, the conductor did not stop at the station, but left him standing. It was held that the failure to provide sufficient means of transportation, when by reasonable diligence it could have been ascertained that they would be needed, was such evidence of wilfulness and gross negligence as to warrant the Court in instructing the jury that they might allow punitive damages. In the opinion, *Heirn* v. *McCaughan*, 32 Miss., 1, was cited as " exactly in point " to sustain the ruling, though even that extreme case was distinguishable from Purcell's case, as well as that at bar, in that the jury must have found preliminary to the assessment of exemplary damages :

1. That, after advertising that the boat would stop for passengers at the landing where the *feme* plaintiff was waiting, the owners or their agent wilfully or capriciously passed by when they could have effected a landing there and had room to accommodate the plaintiff.

2. That the instruction excepted to and sustained was that the plaintiffs were entitled, " from the exposure and discomfort they suffered " in waiting for the boat, to exemplary damages (page 24), it appearing on the trial that the *feme* plaintiff was pregnant, and that the weather being unusually cold she suffered great pain and anguish, whereby her health and life were in peril.

In addition to the authorities already cited upon this point, we find a summary of the doctrine (compiled from leading cases in Ray on Negligence of Imposed Duties, page 228

section 68), which is as follows: "Where, according to the schedule of trains, a passenger arrives at a station intending to take passage, and he finds no train ready, and is compelled to remain over the night, and in consequence of the delay he fails to keep an appointment and complete business arrangements, while he will be entitled to recover the actual expense incurred in his hotel, he cannot recover beyond more than nominal damages"—citing the *Memphis, &c., Railroad* v. *Green*, 52 Miss., 779, to sustain the proposition; and the Court say, in that case, on page 229, that "punitive damages will not be allowed in the absence of any circumstances of malice, oppression, insult, *personal injury*, mental and physical suffering, although sometimes more than actual damages may be awarded against common carriers by way of punishment for their neglect of duty and as a protection to the public." In the application of the proposition which is taken from that case, the Court held that where a passenger train ran sixty yards beyond the platform and failed to stop there long enough for a passenger, who had bought a ticket and was waiting to embark to reach it, the allowance of $1,500 damages was excessive because, "no damages were proved except disappointment, delay and inconvenience. The reasonable rule adopted in Mississippi will not therefore apply either to Purcell's case or to that at bar, since no personal injury was sustained by the complainant in either case, nor was there any ground for compensatory or punitive damages shown, except the disappointment, delay and inconvenience resulting from the failure to furnish means of transportation.

We conclude, therefore, that the plaintiff was not entitled, upon any phase of the evidence, to recover punitive damages for the reasons:.

1. That he has not proved that he sustained any personal injury or shown any grounds for asking damages except inconvenience, delay and disappointment.

2. That in no aspect of the testimony is there evidence of bad motive sufficient to entitle the plaintiff to more than compensatory damages.

In passing upon this question we must invoke the aid of common sense and common observation, since the question whether a given act amounts to negligence at all, and, if it does, what degree of culpability attaches to it, depends not only upon surrounding circumstances, such as the condition of the parties, but the condition of the country and the progress of improvement in science and the arts.

We cannot shut our eyes to the history of railways in North Carolina, and the daily developments of the country by new branch lines built first for the transportation of lumber, and gradually extending their business as carriers to other freight, until at last, though the corporation has been able to purchase not more than two or three engines and a single passenger car with few appointments, its patrons induce it to transport passengers in order that they may have the advantage of saving time and expense by substituting such a conveyance as an improvement on a road wagon or other vehicle. We are not disposed to check the process of evolution which we see around us from a lumber road into a comfortable line for passengers as the development of business justifies the change. Even where a road appears to be retrograding, we see no reason why we should interpose with a harsh rule, such as would have stopped the operation of the Raleigh and Gaston road nearly fifty years ago, with the best efforts of our distinguished Governor Graham, representing the State as a principal stockholder, and running it with poor equipments and constant danger of injury to passengers by derailments and snake-heads and frequent delays of many days to purchasers of tickets. History has repeated itself in the gradual improvement of the roadbed and equipment of the Western North Carolina Railroad. If the axe is to be brought to the root of the tree by stopping these

roads from transporting persons at all unless the conditions be improved, the Legislature has wisely attempted to vest the necessary power in the Railroad Commission to accomplish this end, either by ordering a cessation of operations or the improvement of the roadbed and the purchase of new equipments. Meantime, neither the law, fairly interpreted nor considerations of public policy, warrant the adoption of so harsh a rule as that proposed.

It necessarily follows that Purcell's case is overruled as inconsistent with the principles we have laid down. We are less averse to taking this course, because the doctrine there enunciated can never become a rule upon which the title to property depends, and, as we have intimated already, because it may operate in its enforcement to check the improvement and development of sections now too remote from market to justify the most costly roadbeds and the best equipments.

For the reasons given we deem it unnecessary to discuss the other exceptions, which we may state in a general way are untenable, and we feel constrained to grant a new trial.

Judgement was entered at last term.

CLARK, J. (dissenting): It is the duty of railroad companies to run their trains according to schedule. " Passengers, if delayed, are entitled to compensation for loss of their time (*Pa. R. R.* v. *Books*, 57 Pa., 339), with their expenses during delay, or, when necessary, expenses of procuring another conveyance. As to compensation for loss of time,  *  *  * it is admissible to prove the rate of wages at the place of destination." 2 Harris on Damages by Corporation, 545. "A passenger, in order to avoid delay, can only incur a reasonable expense. He cannot take a special train in order to avoid a slight delay.  *  *  * The value of time lost may also be recovered. Evidence of the rate of wages earned by persons of plaintiff's trade at the place of destination is admissible to guide the jury in fixing the damages." 2 Sedg.

Dam., pp. 862, 863.  Such are the general principles applicable in cases where, by reason of the train being behind the schedule time, the passenger misses connection with the first train on a connecting road, or is delayed even in reaching his destination on the carrier's own line according to the advertised schedule when the action is for breach of contract. As in every such case of delay each passenger is entitled, at least, to nominal damages, it is of importance to the public and the common carrier to revert to the settled principle in actions for breach of contract that the parties are only liable for those damages which were reasonably in their contemplation at the time of making the contract.  This is the usual limit of damages, but there may be cases where the neglect, of the carrier is so wilful as to make it liable in an action of tort for exemplary damages.

The plaintiff, however, contends that as the present is an action of tort, upon the evidence he is entitled to recover exemplary damages.  The question was decided by this Court, no one dissenting, in *Purcell* v. *Railroad*, 108 N. C. 414, where it is said (pp. 417, 418), " *The Code*, sec. 1963, provides, ' Every railroad corporation shall * * * at regular times, to be fixed by public notice, * * * take, transport and discharge such passengers and property * * * on due payment of the freight or fare legally authorized therefor, and shall be liable to the party aggrieved in an action for damages for any neglect or refusal in the premises.' For a violation of such statutory duty the plaintiff might have sued in contract (*Hodges* v. *Railroad*, 105 N. C., 170), but he could elect to sue in tort for the injury and the breach of public duty (existing independent of the statute) by the wilfulness or negligence of defendant.  Bishop Non-Contract Law, pp. 73, 74; Redfield on Carriers, p. 422; *Tallon* v. *Great Western R. R.*, 2 El. & El., 844.  If the tort was committed by mere negligence of the defendant, as simple carelessness or inadvertence, the plaintiff would be restricted

to compensatory damages, and as no special damages were alleged and shown other than obtaining another conveyance, the measure of damages, as laid down by the Court, to wit, the price of procuring such other conveyance would have been correct. But if the conduct of the defendant was wilful, or showed such gross negligence as to indicate a wanton disregard of the rights of the plaintiff, he was entitled to recover punitive damages in addition."

In the present case, there was evidence of great dilapidation of cars, rolling stock, engines, roadbed and trestles, and of continued neglect to repair the same. So gross was it, that for defendant to continue to offer to transport and to receive for transportation passengers, with such defective machinery and roadway, was such a disregard of its duties and the rights of the public, that in case of death resulting to a passenger while *en route*, there are authorities which would have sustained an indictment for manslaughter against the president, directors and other chief officers. It is very certain that, with such machinery and roadbed, to contract to take the plaintiff and others on a round trip, and having gotten them to the other end of the line, to leave them there to get back as they could, was such " gross and wilful disregard of plaintiff's rights as would entitle him to recover punitive damages." As was said in *Purcell v. Railroad, supra*, "should an excessive verdict have been found by the jury, the discretion rested with the trial Judge to correct it; but it would be a denial of justice to permit a common carrier to exhibit such arbitrary and wilful neglect of the duties it has assumed, and such disregard of the rights of others. Yet such is the effect if, without adequate excuse, it should be allowed thus to act with no other penalty than refunding the price of the ticket, and the price paid for another conveyance, since the latter would be demanded in very few cases, and only when the destination is at a short distance. * * * The refunding of the price of the ticket would, in most cases, amount

to nothing, as the passenger would usually buy a ticket by the next train. Yet the inconvenience, annoyance and injustice to the traveling public by such detention would be great and difficult to estimate." In that case, the plaintiff sued for damages because the train ran by its regular station without stopping to take him on. Here, the condition of the machinery and roadbed was such that it was dangerous to travel over the road. The defendant company showed a criminal indifference to the rights of the public in offering to transport passengers when it knew the uncertainty alike of safe transportation, and on schedule time, both of which are implied in its offer.

The company owed it to the public to keep its appliances and roadway in proper condition to transport safely and according to schedule. If it had not money in the treasury, it should have borrowed it, and if unable to do that, it should have suspended operations, as we learn it has since done.

It is not every case where a railroad is in a bad condition, and there is delay or failure to convey, that the jury can give punitive damages. The Court here told the jury that, " if the defendant had reason to believe, and did believe, from the business of the road for several years past, and the condition of its engines, that it would be able to keep its contract to transport plaintiff, and an accident occurred which they could not, in the ordinary course of their business, have foreseen and provided for, it would not be wilful negligence." To this the defendant did not except. The Court further charged, if the jury " found that the road-bed, track and engines of the defendant were, at the time alleged, in such condition as to render it reasonably certain, in the ordinary running of its trains, that the engines would not be able to carry the trains through, or the roadbed and track in such condition as to render it unsafe to carry its trains over it, and they permitted this condition of things to continue up to the alleged time, it would be wilful negligence,

for which you may allow punitive damages.  If you find that they had allowed their road, track and engines to get in such condition as not to be able to do the ordinary business of the road by their negligence, and the character of that negligence was such as to satisfy you that defendant did not care, or was indifferent as to whether they had the train there or not, it would be wilful negligence." To this the defendant excepted.

The action was brought for a tort.  The second paragraph of the complaint was as follows:

" That the defendant so carelessly and negligently conducted and managed the said railroad, and so carelessly and negligently allowed its track, cars, locomotives and other appurtenances belonging to the said railroad as a common carrier to become so out of repair, and the equipment of the said railroad to become so run down and incomplete, and so negligently failed to provide adequate facilities for the transportation of passengers, that the plaintiff, by reason of the premises, having, on the 7th day of September, 1892, purchased at the town of Washington a ticket to the town of Jamesville and return—to return on the 9th day of September, 1892—for which the defendant charged and received from the plaintiff the sum of one dollar, was carried over the railroad of the defendant company to the town of Jamesville.  That upon the said 9th day of September, 1892, at the advertised time, plaintiff presented himself at the defendant's depot in Jamesville, N. C., for transportation over said railroad to Washington, N. C., and because of the negligence, carelessness and lack of proper equipment of a railroad receiving the profit of a common carrier, and owing duties to the public, and without fault on the part of the plaintiff, defendant failed to provide locomotive, cars or other means for the transportation of and failed to transport this plaintiff to the town of Washington according to its public duty and advertisement, to plaintiff's damage five hundred dollars."

And one of the issues submitted was, " Did the defendant negligently suffer and permit its road, rolling stock and equipment to become in the condition described in section 2 of the complaint, so that it was unable to discharge its duties to the public as a common carrier of freight and passengers ?" The above charge was, therefore, appropriate to the controversy in the pleadings, and it was most amply supported by the testimony.

It will be seen by reference thereto that the roadbed, the engines and the rolling stock were all unfit and dangerous to be used, that the manager of the company reported the condition of the same to the owners in Philadelphia, but that in wilful disregard of their public duties they neither put the road, engines and rolling stock into fit condition, nor discontinued holding themselves out to the public for the safe and regular carriage of passengers. If such conduct as the evidence described was not such wilful disregard of the defendant's duties to the public as will entitle the plaintiff to recover punitive damages, it will be absolutely impossible for a railroad company in this State to show that " wilful disregard of its duties and indifference to the rights of the public," as will, under all the authorities, make it liable for punitive damages. The damages recovered was $50. Upon the evidence the defendant has cause to congratulate itself that it is not defendant in an action for damages for death or personal injuries caused by its gross and wilful negligence, or that its officers are not under indictment for manslaughter.

This is not a breach of contract for carriage by a private party. But it is the direct result of a long continued disregard of duties assumed in regard to the public by a corporation which sought and obtained the exercise of the right of eminent domain to furnish it a right-of-way, and other special privileges. These were granted solely in consideration of the services which the defendant undertook to render to the

public, but which it has wilfully and grossly neglected to properly render. The defendant's own evidence was that its manager had repeatedly, time and again, notified the president and directors of the dilapidated and dangerous condition of the machinery and roadbed, but that adequate relief had always been denied.

In *Railroad* v. *Hurst*, 36 Miss., 660, it is said: "It is the right of the jury in such cases to protect the public by punitive damages against the negligence, folly or wickedness which might otherwise convert these great public blessings into the most dangerous nuisances."

The Railroad Commission Act (1891, ch. 320) sec. 11, provides that for a wilful violation of the rules and regulations made by the commissioners, railroad companies are liable for exemplary damages. It would be an anomaly, certainly, if they are not liable for exemplary damages for a wilful violation of statutory regulations, as in this case.

This disposes of the exception to the charge. The exception to the evidence that an engineer in defendant's employ a year previous was allowed to testify to the bad condition of roadway and machinery at that time cannot be sustained. This was competent, taken with the other evidence, to show the gross neglect of defendant in permitting the dilapidation to continue, all the while holding itself out to the public for the safe and regular carriage of passengers. The exception to issues is also without merit. Every phase of the controversy raised by the pleadings could be fairly presented upon the issues submitted. *Humphrey* v. *Church*, 109 N. C., 132.