J. G. HOLMES v. THE CAROLINA CENTRAL RAILROAD CO.

*Punitive Damages—Evidence.*

1. Punitive damages are not recoverable, unless there is an element of fraud, malice, gross negligence, insult, or other cause of aggravation in the act causing the injury.

2. Where the conductor of a Railroad Company, in obedience to the rules of the Company, ordered the plaintiff, who had purchased a first-class ticket, to occupy another car, not so comfortable as the one from which he was removed, but used no force or insult in removing him, *It was held* that the plaintiff was not entitled to recover punitive damages.

3. Where the plaintiff is aware of certain rules of a Railroad Company, and takes passage over the road for the purpose of violating these rules and bringing suit, his declarations to this effect, are admissible in mitigation of damages.

This was a CIVIL ACTION, tried before *Shipp, Judge,* at August Term, 1885, of MECKLENBURG Superior Court.

The action was brought by the plaintiff to recover damages from the defendant company, for an alleged injury sustained in consequence of having been wrongfully ejected from a car on the defendant's road. The plaintiff alleged, that prior to January the 4th, 1883, he had purchased of defendant a first-class ticket on said road, and that on the day aforesaid, he took his seat in a first class car on defendant's road, and soon after leaving Wilmington, going in the direction of Lumberton, the defendant's conductor came into the car, where he and several gentlemen were seated, and told them that was a car appropriated to ladies, and his orders were, that no one should be permitted to ride in that car, except ladies and their escorts. All the other gentlemen at once left, and went into the forward car, except plaintiff. He

remonstrated, and insisted that by his contract with the company, he had the right to ride in that car, and insisted on maintaining his right. The conductor said that he was bound to comply with his instructions, and insisted that the plaintiff should comply with the regulations of the company, and approached him and laid his hand firmly but gently on his shoulder, and removed him to another car, which was not a first-class car, such as the defendant had contracted to carry the plaintiff in, but on the contrary, was deficient in all the comforts and conveniences usual in first class coaches. That it was filthy from constant use; was one half the size of a first class coach; was crowded with passengers; was filled with tobacco smoke, and was dirty, and improperly lighted; and he told the conductor he was sensitive to the odor of tobacco, and it was dangerous for him to inhale it; that he rode three hours on this car, and suffered great pain and mortification, &c.

The defendant admitted that the plaintiff was required to change his seat from the car appropriated for ladies, to another car used for the accommodation of gentlemen. It insisted that the car to which the plaintiff was transferred was a first-class car, and denied the allegations of the plaintiff that it was filthy and filled with tobacco smoke and other offensive odors, but, on the other hand, was furnished with comfortable seats, and was properly lighted; that the car into which the plaintiff was transferred was composed of two compartments, and divided by a close wooden partition, in the rear section of which smoking was not allowed, and was set apart for first-class passengers, while the other section was used for second class passengers. It denied that the conductor at any time put his hand on the plaintiff for the purpose of coercing or removing him, or at any time offered him any indignity, by word or act, but at all times treated him with courtesy and politeness, and when the conductor formally required the plaintiff to remove into the forward car, there was no one present but the conductor, porter and the plaintiff.

The plaintiff testified that the car into which he was transferred from the " ladies car," was not a first-class car.   It was low roofed, no ventilation, and no means of ventilation, except by the windows ; the seats were low and dirty.   It was poorly lighted with a kerosene lamp on one side, full of tobacco smoke and odors from the water closet.   The air in the car was so very warm, that he had to raise a window to get relief from the smoke and odor and heat ; that there was a crack between that and the smoking car, and the door being out of order, the smoke from the adjoining car was let into the one where he was sitting ; that he was very sensitive to tobacco smoke, and when the conductor told him that he was required by his orders to remove him into the car assigned for gentlemen, he told him that he could not resist him physically, but that he protested against his removal, and would do so until there was such a show of force as to compel him ; that the conductor allowed him to remain and take a cup of coffee which he had ordered, and after he had finished with his coffee, the conductor approached him and placed his hand firmly but gently on his shoulder, and forced him to move into the other car ; that the only injury he sustained from his ride in the car to which he was removed, was a slight nausea and headache from which he was relieved by hoisting a window.

The only other witness who was introduced by the plaintiff was C. B. Wright, who testified that he was on the car that night, and that the car used for gentlemen that night was not what is known to the travelling public as a first-class car, but that it was not disagreeable to him, nor was the tobacco smoke, which he could smell, offensive.

On the part of the defendant, Mr. Harden testified that he had been in the employment of the Raleigh and Gaston Railroad, in charge of the motive power.   The car described by the witness, was loaned to defendant a short time before the 4th of January.   It was in good order when it left Raleigh ; it was newly painted, with comfortable plush seats ; was ventilated from the top by approved patent ventilators, and that it was used

on the Raleigh and Gaston Railroad as first or second class car, as the occasion required.

Mr. Clark, one of the gentlemen removed from the ladies car, testified that the car to which he and the plaintiff and the others were removed, was clean and comfortable; that he was sensitive to the smoke of tobacco, but did not detect the odor of tobacco that night in the car, and he suffered no discomfort that night in his ride on the car.

Dr. Clark's testimony was in substance the same. Mr. Murchinson testified, that he rode on the car that night from Wilmington to Lumberton; that the car was clean, had comfortable seats, water closet and lights; that he did not detect the odor of tobacco, or any other offensive odor from the water closet. He conversed with the plaintiff on the trip, after he came into the car; he seemed to be comfortable. He got off with plaintiff at Lumberton, and stayed with him that night. He seemed well, and not injuriously affected by his ride that night. He made no complaint. When the plaintiff came into the car, he heard him say that "he would make the defendants suffer for that night's work."

Captain Everett, the conductor, corroborated the testimony of the other witnesses for the defendant, as to the condition of the car with respect to cleanliness, and the absence of offensive odors.

He also testified, that he did not touch the plaintiff when he required him to leave that car, and when plaintiff said he was very sensitive to tobacco smoke, he told him if he put his objection on that ground, he might stay in the ladies' car, but he said he would not put it on that ground, and went into the objectionable car. This car was borrowed from the Raleigh & Gaston Railroad Company, for use while the passenger car of the defendant was undergoing repairs. There were no offensive odors on it that night. No smoking was allowed in it.

The defendant's counsel asked for several instructions, among which was the following, to-wit:

21

"The plaintiff is not entitled to recover in this action exemplary or punitive damages, upon his own statement of the facts and circumstances, and he can recover, if anything, only actual damages for such supposed suffering as may have been directly caused by the defendant's failure to furnish such accommodation as he was entitled to."

Instead of giving this instruction, his Honor in response to it, instructed the jury, "There is no allegation of any permanent sickness or injury, but you heard the testimony as to what he suffered, and if you should find there was a breach of contract, it is for you to determine what he suffered, and if you should find there was a breach of contract, it is for you to determine what damage he sustained. Take all the testimony, and then say whether he is entitled to any damages. It is contended on the part of the plaintiff that he was roughly treated. As I stated, the conductor had the right to enforce the rules of the company, but he had no right to eject the man with rudeness. If the conductor used improper force or rudeness on that occasion, the plaintiff might be entitled to exemplary damages, but if he used no more force than was necessary, the defendant would not be liable for vindictive or punitory damages. There was no malice shown. If you are satisfied the conductor treated the plaintiff with rudeness, or used unnecessary force in putting him out of the car reserved for ladies, you will take that into consideration in estimating the damages. It is your province to fix that, if the plaintiff is entitled to recover."

The jury returned a verdict in favor of the plaintiff for $475 damages, and there was motion for a new trial. Motion overruled, and defendant appealed.

*Mr. R. D. Johnston,* for the plaintiff.
*Mr. Platt D. Walker,* for the defendant.

ASHE, J. (after stating the facts). We are of opinion the defendant was entitled to the instructions asked, upon the question

of damages, and there was error in the refusal of the Court to give the instructions, and also in instructions given upon that point.

Conceding that the jury were warranted in giving the plaintiff some damages, which we do not decide, but the amount of damages assessed by them was in such disproportion to the actual damage, if any was sustained by the plaintiff, that it is evident that the damages were intended to be, and were, punitive or exemplary in their character.

We do not think this was a case for exemplary damages.

Punitive damages are never awarded, except in cases "when there is an element either of fraud, malice, such a degree of negligence as indicates a reckless indifference to consequences, oppression, insult, rudeness, caprice, wilfulness, or other causes of aggravation in the act or omission causing the injury." Thompson on Carriers of Passengers, 575; and to the same effect is Southerland on Damages, vol. 3, p. 270. According to the testimony of the plaintiff himself, there was no rudeness or unnecessary force, used by the conductor, in requiring him to leave the ladies car. His testimony on that point was, that the conductor, after the other gentlemen who had seats in the ladies car had gone into the other car as directed, he was allowed to remain until he drank a cup of coffee, the conductor came to him and placed his hand on his shoulder, *firmly but gently*, and forced him to move into the other car; that the conductor was a powerful man physically, and greatly his superior in strength, and he knew him personally, and they were on friendly terms. Where was the rudeness or unnecessary force? The statement that the conductor laid his hand gently upon his shoulder, excludes the idea of rudeness or force. Gently means softly, mildly; and rude means rough, insulting,—Webster's Dictionary. There was no rough act or insulting words used by the conductor, and there was consequently no rudeness nor unnecessary force, because there was no force at all employed. His Honor therefore erred in telling the jury, "if the conductor used improper force or rudeness on

the occasion, the plaintiff might be entitled to punitive damages;" and again, "if you are satisfied that the conductor treated the plaintiff with rudeness, or used unnecessary force in putting him out of the car reserved for ladies, you will take that into consideration in estimating the damages."

He should have instructed them that there was no evidence either of rudeness or unnecessary force, or at least no such evidence of either, as would warrant them in assessing exemplary damages against the defendant, and if he was entitled to recover any thing, it was only compensative damages, that is, such as were commensurate 'with the injury they might find, from the evidence, the plaintiff had sustained.

But, aside from the testimony of the plaintiff, which was on many points flatly contradicted by other witnesses, it was shown in evidence that there was no force whatever used on the occasion. Captain Everett, supported by the testimony of the porter, testified that he did not touch the plaintiff, and when the plaintiff told him that he was a gentleman of delicate organization, which was very sensitive to the odor of tobacco, or words to that effect, he told the plaintiff if he objected to going on that ground, he might remain in the ladies car, but the plaintiff declined to remain, preferring to subject his sensitive organization to the offensive odor of tobacco, rather than forego the chance of making some money out of the Railroad Company, by making them, as he threatened, "suffer for that night's work." Taking this evidence into consideration, it is very clear the plaintiff, if entitled to anything, was certainly not entitled to more than compensatory damages, and his Honor should so have charged the jury.

In a case very like this in Ohio, when a passenger was ejected from a Railroad car, and sued for damages, and it appeared that the rate of fare fixed by the company, was higher than that allowed by law; that the plaintiff tendered the legal rate; that upon his refusal to pay more, he was ejected from the cars, but without *rudeness* or *unnecessary violence*; that at the time he took

passage, the plaintiff knew the rate established by the company, and expected to be ejected from the cars, intending to bring an action for such ejection in order to test the right of the company to charge the established rate: Upon these facts, the plaintiff was held to be entitled to compensatory damages, and the company was permitted, for the purpose of mitigating the damages, to give in evidence subsequent declarations of the plaintiff, tending to prove that his object in taking passage on the cars, was to make money by bringing suit against the company for demanding more than the statutory rate of fare. *Cincinnati R. R. Co.* v. *Cole,* 29 Ohio St., 120.

In that case, the conductor had no right to eject the passenger, and it was held, the plaintiff was only entitled to compensatory damages, but that case is distinguished in some respects from this, for here it was very questionable, upon a view of all the testimony adduced, whether the plaintiff was entitled to any damages, but the jury found that fact against the defendant, and assessed exemplary damages, under what we think was an erroneous charge of the Court, and the plaintiff is therefore entitled to a *venire de novo.* Let this therefore be certified to the Superior Court of Mecklenburg, that a *venire de novo* may be awarded.

Error.                                                    Reversed.