D. T. WATERS v. THE GREENLEAF-JOHNSON LUMBER COMPANY.

*Action for Damages—Independent Contractor—Superior and Servant—Liability of Superior for Acts of Subordinate— Trains—Damage to Land in Constructing Railroad—Compensatory Damages—Punitive Damages.*

1. Where the relation of servant and agent is once shown to exist, the master or principal becomes *ipso facto* liable for any trespass committed in the course of his employment or the scope of his agency by the person acting for him, to the same extent as if the wrong had been done by himself.

2. In an action against a railroad company for damages done to land by one who built the railroad under a contract with defendant across the plaintiff's land, it is incumbent on the company to show that it exercised no control and was not interested except in results.

3. The fact that a railroad company which had let to a contractor the building of a part of its road, and the cutting of timber which, under certain restrictions, it had acquired the right to cut, supervised the cutting of the timber and issued orders which the contractor was bound to obey, showed affirmatively a state of subjection on the

contractor's part that made him, in law, the servant of the railroad company.

4. The owner of land contracted to sell to S. timber of·a certain size and to allow the latter's train, tramroad, wagons and employees to enter on the land and remove the timber so cut. S. assigned his contract to defendant corporation, with which one P. contracted to build the road, and cut the timber on the land through which the road would run, and deliver the timber to the company at the railroad. In an action against the railroad company for damage done to the land by P. : *Held* (1) that the word "train" must be interpreted to mean a "railroad train"; (2) that the right to enter with such train involved the right to construct a railway across the land, and to clean out such roads as would enable use to be made of them in hauling the timber ; (3) that the owner of the land is entitled to compensatory damages neither for injury done to the land in cutting and removing so much timber as was reasonably necessary in order to construct a way for the passage of lumber trains, nor for such injury to the drainage of the land as was necessarily incident to its skillful construction.

5. In such case, however, the owner of the land is entitled to compensatory damages for the cutting of cross-ties on land not included in the right-of-way, and the negligent filling of ditches, instead of building bridges over them, in constructing the roads necessary to remove the timber, and for breaking down fences.

6. Exemplary or punitive damages are recoverable in actions of tort only when a bad motive is shown, and only for such acts of trespass on land as are committed through malice or accompanied by threats, oppression or rudeness to the owner or occupant.

7. Where a contractor for a railroad company, engaged with an agent of the company in locating the right-of-way across plaintiff's land, asked plaintiff's tenant what kind of a man plaintiff was, whether he had money and could fight a lawsuit, and the agent of defendant said plaintiff was "only a half way man": *Held*, in the trial of an action for damages for injury to the land, that the language of the agent was not necessarily evidence of malice, wantonness or insult, so as to entitle plaintiff to punitive damages.

8. Where a contractor, engaged in building a railroad for defendant company, being forbidden by the owner of the land to cut trees of a less size than had been agreed upon, replied that he was working for the defendant corporation and was building a railroad for which he was obliged to have crossties: *Held*, that such language was neither rude nor indicative of malice so as to justify punitive damages.

9. In an action for an injury in which the plaintiff asks for punitive damages, it is for the Court, and not for the jury, to determine whether the evidence is sufficient to entitle the plaintiff to such damages.

CIVIL ACTION for damages, tried before *Bynum, J.*, and a jury, at Spring Term, 1894, of MARTIN Superior Court. From a judgment for the plaintiff the defendant appealed. The facts appear in the opinion.

*Mr. W. B. Rodman*, for plaintiff.
*Messrs. Moore & Stubbs*, for defendant (appellant).

AVERY, J.: Whatever authority may have been given the defendant by the Legislature in its charter, it was not acting, or purporting to act, under the right of condemnation for public purposes, but by virtue of a contract between the plaintiff and Dennis Simmons, the benefit of which had been assigned by Simmons to the defendant, in which the plaintiff had sold and conveyed all of the " pine and poplar timber on said land, which would measure twelve inches in diameter sixteen feet from the ground, with the right for his train, tramroad, wagons and employees to enter on said land and remove said timber." No copy of the contract was sent up, and we must therefore construe the foregoing portion of it, embodied in the statement of the case on appeal, and purporting to be its only material provision.

Claiming authority to do so under this contract, the defendant company entered into an agreement with one Parker, whereby Parker was to construct a railroad, " cut the timber on the land through which said road, if extended for ten miles, would run, and deliver the said timber to said company at the railroad." During the months of November and December, 1891, and January and February, 1892, Parker accordingly built a railroad over plaintiff's said land for a distance of 1,952 yards, and cleared and occupied a

road-bed twentyone feet wide along the whole line, which passed through unenclosed woodland, except at one point, where the fence, or enclosed woodland, was set back by defendant to clear the way for the track.

The other material testimony sent up as a part of the statement, is as follows:

" It was in evidence that the timber on plaintiff's land was cut by Roberson under contract with Parker, and was paid for at so much per thousand feet, Roberson employing and paying his hands    There was evidence tending to show that Parker was instructed by the defendant company to cut the timber as they had bought it, and that they had informed him what they had bought; that plaintiff had rented the cleared land on said tract to a tenant, and made advances to the tenant to enable him to cultivate the land, which were, according to the said rental contract, to be paid out of the crop raised thereon; that at the time of building the road there had been enough cotton gathered on the land to pay the rent, but not enough to pay rent and advances; but there was enough in the field, together with what had been gathered, to pay both rent and advances."

The first contention of the defendant company was that Parker was an independent contractor, and that the corporation could not be made to respond in damages for any unlawful act of his committed in carrying out his contract. A person may become a trespasser by doing, himself, a lawful act in an unlawful manner, to the injury of another, because the restriction upon his right to exercise dominion over his own property is that he is not allowed to so use it as to injure another. Where he employs another to do what is unlawful, or to act or work for or serve him in the performance of a lawful act in an unlawful manner, in either case, such employer is liable for resulting injury to third persons, whether such employees or servants " are paid by the job or by the year or the day," and whether the master " be present

or absent." *Wiswall* v. *Brinson*, 10 Ired., 554. Where the relation of servant or agent is once shown to exist, the master or principal becomes *ipso facto* liable for any trespass committed in the course of his employment, or the scope of his agency, by the person acting for him, to the same extent that he-would have been answerable had the wrong been done by him in his own proper person. Does the testimony, in any phase of it, tend to show that Parker, who committed the trespass was not the servant or agent of the defendant company, but an independent contractor? If so, it was error to instruct the jury that, if they believed the evidence, he was the agent of the company.

Had the entry upon the land been made in the exercise of the right of eminent domain, the company would have been answerable not only for the unlawful acts of its servants, done in the course of their employment, or by its consent, but for injuries done by such contractors, when exercising for the company some chartered privilege or power, with its assent, since when so acting the contractor would be deemed a servant, as between himself and his employer, upon the principle that a corporation which owes a duty to the public cannot rid itself of responsibility by delegating it to another. *West* v. *Railroad*, 63 Ill, 545; 14 Am. and Eng. Enc., page 840 and note 2; Wood's M and S., § 316.

In such cases, however, the corporation is not held liable where the contractor commits a trespass upon uncondemned land, unless it authorizes or assents to the unlawful act. *Wattemeyer* v. *Railroad*, 30 Am. and Eng. Railroad Cases, 384.

The liability of the superior as master depends upon his right to control the conduct of the person with whom he contracts in the prosecution of the work. 14 Am. and Eng. Enc., 830; *Railroad* v. *Henning*, 9 Wall., 649; *Railroad* v. *Reese*, 61 Miss., 581.

It does not appear how Parker was paid for the construction of the road, whether he was the mere instrument of the

company, which directed the work, furnished the material necessary to prosecute it, and paid the hands, or whether it devolved on him exclusively, under his contract, to attend to all of these matters, though it would seem that the burden was upon the company, for whom the work was done, to show that it exercised no control, and was not interested except in results. But the fact that the corporation supervised the cutting of the timber, and issued orders that Parker was bound to obey, shows affirmatively, of itself, a state of subjection on his part that made him, in law, its servant. 14 Am. and Eng. Enc., *supra;* Wood's, *supra,* 603 (§ 312).

Conceding, then, that Parker was the servant of the company, it remains for us to determine whether he was shown to have subjected his superior to liability for any trespass committed while acting in that capacity; and, if so, by what rule the measure of damage is to be ascertained. The contract, as set forth in the statement of the case, gives to Dennis Simmons the same right for "his train," his tramroad and his wagons and employees to enter. We think that the word "trains," as distinguished from wagons to be drawn on the ways that were to be constructed, must be interpreted as referring to railroad trains, which Simmons had, under the contract, and the defendant had, as his assignee, the right to take with him on the land for the purpose of removing the timber conveyed. The right to enter with such trains involved the authority to construct a railway, upon which alone a train of cars could enter, as necessarily as the right to take wagons on the land for the same purpose carried with it the implied agreement to permit the clearing out of such roads as would enable Simmons to make reasonable use of them in hauling. In so interpreting the language of the contract between plaintiff and Simmons, we have not overlooked the fact that the Judge makes no allusion, in charging the jury, to any contention that the word was used in the sense of railway trains. It may be that there was something

in the context of the agreement which showed that the word was used in some peculiar sense, or that there was proof of some custom among lumber dealers to give to it a particular meaning, or counsel below may have agreed upon the proper interpretation. In the absence of such explanation, we must follow the rule (1 Greenleaf, §§ 278 and 295) which requires that we shall give the word its ordinary and popular meaning. Resorting to the lexicons for light, we find (Webster's and Century Dictionaries) that there is no popular or ordinary definition, but that of a railway train, that we can adopt. It is clear that there would be no reason for providing especially for the right of ingress for a string of loose and unattached animals, the only other meaning that would be in the least consonant with the context. It may be that when the case is again tried, the Court will have the benefit of some competent testimony, either in the context or *dehors* the instrument, that will justify a different interpretation. But in the light of the meager statement before us, we must hold that the Court erred in instructing the jury that the plaintiff was entitled to compensatory damages for the injury done to the land in cutting and removing so much timber, as it was reasonably necessary to remove, in order to construct a way for the passage of lumber trains. Whether a way twenty-one feet was necessary for the purpose, was a question for the jury, under proper instruction. Construing the contract as we do, we conclude that, with the right to build a road sufficient for the passage of trains, the plaintiff, by necessary implication, agreed to surrender his claim to such damage to his land as might be incident to the skillful construction of what he had empowered Simmons to build. The same implication must grow out of a grant of the right to construct a private railway, as is held to arise in case of a grant or condemnation for the use of a common carrier. *Fleming* v. *Railroad*, decided at this term ; *Adams* v. *Railroad*, 110 N. C., 325.

Upon the same principle, the right to enter with trains

carried with it immunity for such injury to the drainage to the land as was necessarily incident to its skillful construction. But granting that the defendant had the right to construct a railway, it was not authorized, either by the express terms of the contract, or by reason of any implication arising out of it, to cut cross-ties off the right-of-way, or to destroy fences in getting them. It was negligence in the defendant to fill up plaintiff's ditches, instead of building bridges over them, in constructing the wagon roads necessary to remove the timber. The plaintiff was entitled to compensation for any reduction in the value of the land, either by cutting timber below the stipulated size for sawing, or cross-ties outside of a reasonable right of-way for trains, tramways and wagon ways. He could recover for unlawful obstruction of the ditches the cost of removing the obstruction, and for destroying fences, the cost of replacing them.

Exemplary damages are not recoverable in any action of tort, but only in those where a bad motive is shown (*Hansley* v. *Railroad,* decided at this term), and not for every trespass on land of which a defendant is guilty, but only where it is committed through malice, or accompanied by threats, oppression or rudeness to the owner or occupant. 1 Southerland, sec. 392; 1 Sedgwick, sec. 362; Wood's Mayne on Damages, sec. 579; *Merest* v. *Harvey,* 5 Taunton, 150. By reference to the authorities it will appear that punitive damages have not been allowed where the testimony tended to show good faith and only a mistake as to authority (*Beverage* v. *Welch,* 7 Wis., 465), or even where the trespasser had good reason to believe he was in the wrong. *Inman* v. *Ball,* 65 Iowa, 543. In the case of *Merest* v. *Harvey, supra,* which is cited by plaintiff's counsel, there was evidence of threats and rudeness, if not violence, and in that it is distinguishable from the case at bar. Where the trespasser's conduct is shown to be prompted by malice, or amounts to rudeness or insult, exemplary damages are always recoverable; and such,

in substance, we understand to be the rule laid down in the cases cited by plaintiff's counsel from our own reports. *Wyley* v. *Smitherman*, 8 Ired., 236; *Duncan* v. *Stalcup*, 1 Dev. & Bat., 440.

The testimony relied upon as tending to show malice, wantonness or rudeness, is—

1. That while Parker, the contractor, and Mobley, who was the agent of the defendant, were engaged in locating the right-of-way, Parker called the tenant of plaintiff to him, and said, "What kind of man is Waters? Is he a man of means, and could he fight a lawsuit?" Whereupon Mobley, defendant's agent, said "He is only a half-way man."

2. That plaintiff, while Parker was building the railroad, forbade him from persisting in the work and from cutting any trees under the size mentioned in the Simmons deed, whereupon Parker replied, "that he was working under the Greenleaf-Johnson Lumber Company; that they had a charter for the road, and he (Parker) must have cross-ties to build it, and for Waters to go to Norfolk and see Johnson."

The natural inference from the conversation between Waters and Parker was that the latter, in good faith, believed that he was constructing the road on a condemned right-of-way, and had the right to appropriate the necessary cross-ties; the question of damage being one to be adjusted between the officers of defendant company and Waters. The language is neither rude nor indicative of malice.

The language used by Parker to the tenant of Waters is, at most, equivocal, not necessarily evidence of malice, wantonness or insult, the burden being upon one demanding punitive damages to bring the case within the rule by showing the bad motive. It is questionable whether such language, used by a servant, could be imputed to the master, if it did in reality tend to show malice on the part of the servant. Indeed, a similar declaration of a servant, where the trespass consisted in removing certain poles, that "they

would obey the orders (to remove the poles) if it broke the owners," was not evidence of bad motive on the part of the employer. *Railway* v. *Tel. Co.*, 69 Texas, 281. The question whether there was sufficient evidence to entitle the plaintiff to recover punitive damages was one for the Court, not for the jury.

For the reasons given, we think that there was not such evidence as warranted the assessment of more than compensatory damages, and the Court therefore erred in leaving it to the jury, if they saw fit, to allow vindictive damages, and for this, and other erroneous rulings mentioned, we must grant a new trial.                                    New Trial.