P. REMINGTON and wife v. G. L. KIRBY.

*Action for Damages— Unlawful Entry— Trespass—Exemplary or Punitive Damages— Wantonness.*

Punitive damages will be allowed in an action for unlawful entry or trespass on land only where the trespass is committed through malice, or is accompanied by threats, oppression or rudeness to owner or occucupant.

ACTION for damages for unlawful entry by defendant on land which he had leased to the plaintiff, tried before *Starbuck, J.*, and a jury, at January Term, 1896, of NEW HANOVER Superior Court. The issues submitted to the jury, and the references thereto, were as follows:

"I. Did the plaintiff abandon the land described in the lease? A. No.

II. Did the plaintiff, on his part and before the entry of the defendant, comply with the terms of the lease? A. Yes.

III. What amount, if any, is plaintiff entitled to recover as actual damages? A. $608.90.

IV. What amount, if any, shall plaintiff recover by way of punitive damages? A. $1,000."

The grounds of the action and the facts involved can be gathered from the charge of his Honor, the pertinent part of which was as follows'

"The plaintiff, Remington, brings this action against the defendant, Kirby, to recover damages for Kirby's unlawful entry upon the lands leased by Kirby to him. As appears by the contract, on the 29th day of September, 1892, the plaintiff, Remington, rented and leased from the defendant a certain truck farm, located in the county of Wayne, containing fifty acres, for a term of one year, with the privilege of extending the term to three years from the 20th day of October, 1892.

· "That the said Remington was to pay Kirby an annual rental of four dollars per acre at stated times, as set out in lease. Kirby was also to furnish Remington with two mules, for which Remington agreed to pay the sum of forty dollars per year, keeping them in good condition and returning them at the expiration of the lease in good order; and Remington, on his part, agreed that he would cultivate said land thoroughly and properly, keep all of the ditches on the land rented to him cleaned out and off, and one-half of the boundary ditch, or perform one-half of the labor necessary to attend to the same, and to keep the fences in repair. Said Remington was to have for use on said land such manure as was then on the premises and return an amount of equal value on the termination of his occupancy, and return same premises to Kirby in as good condition as they were when he received them, ordinary wear and tear excepted; and upon any failure on the part of Remington to comply with this contract on his part, the defendant, Kirby, was to have the immediate and full possession thereof.

"Now, it is alleged, on the part of Remington, that during the month of October he entered into possession of said premises, and at the time of entering upon the same he could not have the full control and possession of the land by reason of the fact that the defendant, Kirby, then had his crops, or a part of them, still on the land, and that as soon as he could get possession of the land he began preparations for his crop, which he expected to make, but that on account of the very cold January and the wetness of the season, he was able to do very little work on the farms during the months of January and February; that he had hired a superintendent by the name of Wiley and a colored man to aid in the farming operations, and had provided them with all that was necessary for their use,

and also made preparations for the feeding of the mules; that about the 6th or 7th of February, in the year 1893, he found it necessary to bring his wife to Wilmington for the purpose of receiving medical attention, and that before leaving the farm he had put things in order in the house in which he lived on the farm and fastened the windows and doors of the house, and made arrangements with a man by the name of Ginn to provide his hands with what provisions were necessary for their support, and also for the feeding of the mules; that at the time he left home he expected to return in the course of ten days or two weeks; that he wrote from Wilmington to his foreman, Wiley, from time to time, giving him directions as to the crop, and that he always intended to return until he received the notification from the defendant, Kirby, that he had entered and taken possession of the farm; that he had not abandoned the farm and had no intention of abandoning it, and that he always intended to return to the farm as soon as his wife's health permitted, had it not been for the defendant's entry upon the farm and taking possession. The plaintiff claims that by reason of this unlawful entry upon his possession he is entitled to actual damages to such amount as he actually lost, and that this includes the cost of his moving of himself and family from Raleigh to the farm; of what provisions he had made for the making of his crop; of what injury and damage was done to his furniture, and what things were lost, and also actual damages or loss by reason of what the term was worth over and above what he had agreed to pay. He also claims punitive damages, by reason of the fact that the entry made upon his possession was unlawful, wanton and reckless.

"It is contended by the defendant that the plaintiff, Remington, after renting the farm, abandoned it and gave up the possesson, and thereby he had the right to take posses-

sion of the same.    It is also claimed on the part of the defendant that the plaintiff, Remington, did not comply with the terms of the lease, in which he agreed to cultivate the land properly and thoroughly, and to keep all the ditches on the land rented cleaned out and off.

"It is further claimed by the defendant, that the farm was rented for the purpose of a truck farm, and that the preparation for making a truck farm, fertilizing and the proper operations of the land, manuring and putting out same, ought, according to the course of good husbandry, to be done during the fall and early winter months; and that the plaintiff, instead of giving his attention to the making of such preparation for the cultivation of the truck crop, soon after taking possession of the said farm, spent his time in going about the country buying eggs and produce for shipment, and that he gave little or no attention to the preparation for making said crop.

"It is further claimed by the defendant, that in order to make a good truck crop on the said land, it is necessary that the ditches on the same shall have been cleaned out and off, and the land drained and fertilizer composted, prior to the time the plaintiff left the farm; and it is further claimed by the defendant, that on or about the 6th or 7th days of February, the plaintiff left the farm, went to the city of Wilmington, where he remained continuously, not visiting the farm in the interval, until the 13th of March; that the foreman left by the plaintiff upon the said land was unable to procure supplies for himself and the hands employed by the plaintiff to work with him, and feed for the mules, and notified the defendant that the plaintiff failed and neglected to provide the same; that the said foreman threatened to leave the place.

"It is further contended by the defendant, that, in order to procure the said foreman to remain, he, the defend-

ant, for some time furnished supplies for the laborers and
mules, and that the plaintiff, failing to return and failing
to provide supplies necessary for the proper cultivation of
the land, he, defendant, took possession of the same;
that the entry made by him upon the said land was not
forcible, wanton or reckless, but was made peaceably and
with the assistance of the foreman left by the plaintiff in
charge of the same, and was made after he had consulted
counsel and made a full disclosure of all the facts in the
case, and had been advised that he had a right to so enter,
and after he believed, and had reason to believe, that the
plaintiff had abandoned the farm.''

Judgment was rendered according to the verdict and de-
fendant appealed.

*Mr. J. D. Bellamy,* for plaintiff.
*Messrs. Aycock & Daniels,* for defendant (appellant).

FAIRCLOTH, C. J. The principal contention of defendant
(appellant) before this court was, that there was not suffi-
cient evidence to entitle plaintiff to punitive or exemplary
damages, and he requested his Honor to so instruct the
jury, which was refused. The defendant, admitting the
lease and entry in March, insisted that the latter was law-
ful by reason of the forfeiture clause in the contract, and, if
the entry was unlawful, it was made in good faith and un-
der an honest belief of his right to do so. The jury found
these questions against defendant.

The defendant's eleventh prayer for instruction was,
''That there is no sufficient evidence to entitle the plain-
tiff to punitive or exemplary damages.'' The defendant's
liability for such damages does not depend upon whether
he was a wrong doer or not, but upon the manner and
motive of such wrong doing. ''Exemplary damages are

not recoverable in any action of tort, but only in those where a bad motive is shown, and not for every trespass on land of which a defendant is guilty, but only where it is committed through malice, or accompanied by threats, oppression or rudeness to the owner or occupant. Punitive damages have not been allowed where the testimony tended to show good faith and only a mistake as to authority." *Waters* v. *Lumber Co.*, 115 N. C., 648; *Hansley v. Railroad*, 115 N. C., 602, and the several authorities cited. It will be noticed that, in all the well considered cases allowing punitive damages, wantonness in some one of its many forms was the controlling element, and illustrations will be found in *Wylie* v. *Smitherman*, 30 N. C., 236, and *Duncan* v. *Stalcup*, 18 N. C., 440. We deem it unnecessary to recite the evidence. We have examined it carefully and fail to find any sufficient evidence to show conduct on the part of defendant to subject him to exemplary damages within the rule above declared, and we think the eleventh prayer should have been given.

New Trial.