AMMONS v. RAILROAD.

(Filed May 26, 1905.)

*Railroads—Regulations Requiring Purchase of Tickets—*
*Expulsion When no Tickets on Sale.*

1. A regulation of a carrier is reasonable which requires passengers to
   procure tickets before entering the car, and where this require-
   ment is duly made known and reasonable opportunities are
   afforded for complying with it, it may be enforced either by
   expulsion from the train or by requiring the payment of a higher
   rate than the ticket fare.

2. If, without having afforded a reasonable opportunity to the pas-
   senger to provide himself with a ticket, the carrier should eject
   him upon his refusal to pay the additional charge for carriage
   without a ticket, when he is ready and offers to pay his fare at
   the ticket rate, his expulsion will be illegal, and he may recover
   damage for the trespass, and his right of recovery cannot be
   made to depend upon the conductor's knowledge or ignorance of
   the fact that the agent had no tickets for sale.

ACTION by W. R. Ammons against the Southern Railway
Company, heard by *Judge B. F. Long* and a jury, at the
August Term, 1904, of the Superior Court of SWAIN County.
From a judgment of nonsuit, the plaintiff appealed.

The plaintiff alleges that he was unlawfully ejected from
one of the defendant's trains and sues to recover damages for
the wrong thus committed. At the close of the testimony
and after the plaintiff had requested certain instructions to
be given to the jury, the court held that he could not recover
in the action. The plaintiff thereupon submitted to a non-
suit and appealed. It is necessary to state only the substance
of his testimony which is as follows: On June 20, the plain-
tiff went to Almond, a station on defendant's line, to buy a
ticket to Noland, which is nine miles away. The defendant's
agent told him he was out of tickets, but to get on the train
and he would tell the conductor not to charge extra fare. The

agent said the ticket rate was 41 cents. The extra or train rate was 65 cents. The agent said the plaintiff would have to pay only 41 cents. He boarded the train and the conductor asked him for his ticket. The plaintiff told him what the agent had said to him and the conductor demanded 75 cents and said that the agent did have tickets. He then told the plaintiff to pay 75 cents or get off. He pulled the bell cord, when the plaintiff said, "If you put me off, I will sue the company," and the conductor replied, "It would not make a durn bit of difference to me if you did." When the conductor called for the fare, the plaintiff offered him 50 cents and added that he did not mind a rebate, but did not want to pay 75 cents. The conductor refused to take the 50 cents and put the plaintiff off the train 400 yards from the station. It is a rule of the company to require the payment of 25 cents extra when a passenger has no ticket. There was evidence as to the damages, not necessary to be stated.

*A. J. Franklin* and *F. C. Fisher* for the plaintiff.
*Moore & Rollins* and *A. B. Andrews, Jr.,* for the defendant.

WALKER, J., after stating the case: Assuming the plaintiff's testimony to be true, and giving him the benefit of all reasonable inferences therefrom, and this is the way it should be considered, we think the judge erred in his intimation of opinion against the plaintiff's right to recover. The law of the case, at least in the present development of the latter and in the aspect of it now presented, seems to be well settled, and is thus stated by a learned and accurate text writer: "It is undoubtedly competent for a railroad company, as a means of protection against imposition and to facilitate the transaction of its business, to require passengers to procure tickets before entering the car, and where this requirement is duly made known and reasonable opportunities are af-

forded for complying with it, it may be enforced either by expulsion from the train regardless of a tender of the `fare in money, or by requiring the payment of a larger fare upon the train than that for which the ticket might have been procured. A regulation or by-law of the carrier is not unreasonable which provides that when such tickets are not procured before the commencement of the journey, and the carrier is therefore put to the inconvenience of collecting from the passenger his fare during its progress, the price of the carriage shall be more than would have been charged for the ticket, and that upon the refusal of the passenger to pay the higher fare, not extortionate in amount, he shall be ejected. And if adopted in good faith and with a view to .facilitate the business of the carrier, there can be certainly nothing unreasonable or unjust in such rule, especially in the case of railway carriers. But as a condition precedent to the existence of this right of expulsion for the refusal to procure a ticket or to pay the higher fare, an opportunity, at least reasonable and such as the statute requires where a statute exists, must have been afforded by the carrier to the passenger, not himself in fault, to provide himself with the required ticket. If, therefore, no office be kept or opened at the proper time, nor adequate facilities be provided for the purpose of supplying passengers with them, or if the office provided for the purpose be closed before the time fixed by law or by a rule of the carrier, and for either reason the passenger has been unable to obtain a ticket, the higher rate cannot be lawfully demanded. And if, without having afforded such proper facilities to the passenger, the carrier should exact from him the additional charge for carriage without a ticket, the former may sue for and recover the amount so paid above the established rate when a ticket is purchased; and if, upon his refusal to pay it, he be ejected, when he is ready and offers to pay his fare at such established rate, his expulsion will be illegal, and he may recover damages for the trespass."

Hutchinson on Carriers (2nd Ed.), sec. 570, *et seq;* 5 Am. & Eng. Enc. of Law (2nd Ed.), p. 595 and note 4.

In his work on. Carriers, at section 269, Fetter thus states the doctrine: "By the overwhelming weight of authority, the furnishing of proper facilities to enable a passenger to purchase a ticket is a prerequisite to the right to demand a train fare at a higher rate than the ticket fare; and, if such facilities are not furnished, a passenger who without fault on his part boards the train without such a ticket, will, on tender of the ticket fare, be entitled to all the rights and privileges that a ticket would afford him. If he is rightfully on the train without a ticket, it is his right to complete his journey by paying the ticket rate for his fare. So, it has been held that the fact that the company agrees to refund the excess of train fare on presentation of the conductor's receipt or check at a regular station, does not authorize the higher train charge, if no reasonable opportunity is given the passenger to purchase a ticket in the first instance. It cannot be justly said that it is reasonable to require the passenger to pay more than a regular rate on the train, even though a process is created by which he may at some future time get back the excess, unless the passenger has first had an opportunity to purchase a ticket at the station from which he starts."

These principles are well sustained by the authorities cited in their support and are in themselves most just and reasonable. They apply with peculiar force to the facts of this case.

The plaintiff's right of recovery cannot be made to depend upon the conductor's knowledge or ignorance of the fact that the agent had no tickets for sale to intended passengers. If he did not know it, and refused to accept and act upon the plaintiff's statement, no fault can be imputed to the plaintiff and the defendant cannot escape liability, as the cause of action rests upon the fact that there was no opportunity afforded to purchase a ticket, and the plaintiff is not responsible and cannot be made to suffer for the conductor's ignor-

ance of existing conditions.  The defendant's station agent could easily have informed the conductor that his tickets had been exhausted and actually promised the plaintiff to do so, so that in this case there was no excuse for a want of knowledge of the facts.  It is sufficient to declare, in the light of the authorities and with the plaintiff's testimony before us, that he was entitled to have the case submitted to the jury under proper instructions from the court.  Having so decided, we need not discuss the question of damages.  The subject, though, has recently been considered by this court in the following cases: *Holmes v. Railroad,* 94 N. C., 318; *Rose v. Railroad,* 106 N. C., 168; *Tomlinson v. Railroad,* 107 N. C., 327; *Allen v. Railroad,* 119 N. C., 710; *Remington v. Kirby,* 120 N. C., 320.

There was error in the ruling of the court that the plaintiff upon his own showing was not entitled to recover.

New Trial.