## D. M. WARREN v. COHARIE LUMBER COMPANY.

(Filed 14 December, 1910.)

**Navigable Streams—Obstruction—Damages — Punitive Damages — Evidence.**

> In an action wherein actual damages were claimed, with punitive damages, for damming a navigable stream, made a misdemeanor by Revisal, 3559, there was evidence sufficient tending to show, and under correct instructions from the court the jury found, that the stream in question was navigable: *Held*, to recover punitive damages it was insufficient to show merely that the stream was obstructed to plaintiff's damage, it being necessary to prove, in such cases, malice, fraud, wanton or willful disregard of the plaintiff's rights, or other circumstances of recklessness or aggravation.

APPEAL from *Whedbee, J.*, at August Term, 1910, of SAMPSON.

This action was brought to recover both actual and punitive damages for obstructing the Little Coharie River, a floatable

stream in Sampson County. The plaintiff was floating a raft of telegraph poles from a point on the said river in Sampson County to Wilmington, N. C. The plaintiff's agent in charge gives the following account of the act which caused the injury, for which this action is brought to recover damages:

"I took the raft down the river. We left home on Saturday. A tree had blown across the river about a half or three-quarters of a mile above the mill. We found the river full of logs above this tree. They were 4 to 5 feet deep on each other. The tree had stopped them and blocked the river. We broke the logs loose and they drifted down on others. We could not get through with our raft. It was as big a mess as I ever saw. We went down to the defendant's mill and saw Mr. Clement. He had the river dammed around the big sharp bend in the river with spiling driven down. There was a tram running across the stream. He had made a new cut across the neck of this bend. We asked Mr. Clement to open the river, and he told us that he had it dammed for his benefit at the mill. There was a tree across the river a half or three-quarters of a mile above the mill which held the logs that had blocked our passage, and he told us to go up and cut that log away. He said he did not want to unlock the river and let us by at the dam; that he would lose a lot of work that he had done, and that he would have to do it over again. He said: 'Suppose I pay you some money and you turn and go back home and wait until there comes another freshet,' and by that time we would have the cut open which would let us through this channel. The cut changed the channel of the river. Mr. Warren's son said, 'What amount of money can you afford to give us?' and he said, '$25.' I said, 'Your pa will not be satisfied.' Mr. Clement then said if the river must be opened, for us to cut out the sweet-gum tree across river above and he would open up a way. He told us that the last logs above the mill in the river which had blocked our passage were not his logs; that he owned none of the logs until they were delivered into his pond. We went down and sawed out the logs before night. This was Thursday. It took us until dark to get the logs broken loose, and soon the logs would run together and block us again. We then went on down to the

mill, and no effort was made to open the river that night. We went to see Mr. Clement next morning and called him up about sunrise. He said he would send some hands up the river to help with the logs. Some colored men came. They commenced work that day to open the river. They worked as hard as they could. Jake Hill, who had a raft ahead of us, got his raft through the cut. The pond was across the old channel of the river. Our raft did not get through that night, and by next morning, which was Saturday, the freshet had run out. I could have carried the poles on to Wilmington but for the obstruction. We went back to Clinton. Next week we went back to our raft and got them through by tearing them to pieces. We were delayed, as the logs had accumulated and backed up above the bridge."

The Mr. Clement referred to was the general manager of defendant; the dam across the river was built by defendant. There was evidence tending to prove that the Little Coharie River was a floatable stream. In the complaint, the allegation upon which plaintiff bases his claim for punitive damages is as follows:

"3. That the defendant has unlawfully, willfully, and deliberately dammed up said stream at its said mill so that rafts cannot pass, which obstruction is made a violation of law, and is permitted to remain in said river, although the defendant well knows that the same is in violation of law and the rights of rafters."

The following issues were submitted to the jury, which responded thereto as set out:

1. Was the Little Coharie River a public floatable stream at that point on said stream where plaintiff alleges the same to have been obstructed at the time of the alleged obstruction? Answer: Yes.

2. If so, did the defendant company unlawfully and wrongfully obstruct the same to the injury of the plaintiff? Answer: Yes.

3. What actual damages is plaintiff entitled to recover of defendant? Answer: $100.

4. Did the defendant willfully and wantonly obstruct free passage of plaintiff's raft down the Little Coharie River, as alleged in the complaint?   Answer: Yes.

5. What punitive damages, if any, is plaintiff entitled to recover of defendant company?   Answer: $200.

The defendant excepted to the issues submitted, and excepted to his Honor's charge on the issue of punitive damages.   This charge was as follows: "That if the defendant wantonly and willfully obstructed said stream, whereby the plaintiff was hindered and delayed in conveying his raft down the same, that the jury should answer the fourth issue 'Yes,' and could award punitive damages, or exemplary damages."

There was judgment upon the verdict, and defendant appealed.

*Faison & Wright and Henry A. Grady for plaintiff.*
*George E. Butler for defendant.*

MANNING, J.   In our opinion, the evidence that the Little Coharie River was a floatable stream within the definition established by the decisions of this Court was sufficient to be submitted to the jury, and, approving the rulings of his Honor upon the exceptions taken to the evidence addressed to the first issue, we cannot disturb the finding on that issue.   *Comrs. v. Lumber Co.,* 116 N. C., 731; *S. v. Corporation,* 111 N. C., 661; *Gwaltney v. Land Co.,* 111 N. C., 547; *s. c.,* 115 N. C., 581. We think the plaintiff was entitled to recover upon the evidence the actual or compensatory damages sustained by him and allowed by the jury, but we do not think the evidence sufficient to be submitted to the jury on the issue of punitive damages. Section 3559, Revisal, condemns as unlawful the act of the defendant in willfully obstructing the flow of the water in the Little Coharie River; but the fact that defendant did this act is the only fact offered by the plaintiff in support of the allowance of punitive damages.   There is no evidence of malice, wantonness, ill-will, trespass upon the person, or any other fact usually held essential for an allowance of punitive damages. In actions of tort, in which punitive damages are allowed, the

controlling principles are very well settled by the decisions of this Court. *Downing v. Stone,* 152 N. C., 525; *Stanford v. Grocery Co.,* 143 N. C., 419; *Kelly v. Traction Co.,* 132 N. C., 368; *Ammons v. R. R.,* 140 N. C., 200; *Hansley v. R. R.,* 117 N. C., 565; *Waters v. Lumber Co.,* 115 N. C., 648; *Holmes v. R. R.,* 94 N. C., 318; *Jackson v. Tel. Co.,* 139 N. C., 347; *Remington v. Kirby,* 120 N. C., 320; *Wylie v. Smitherman,* 30 N. C., 237; *Duncan v. Stalcup,* 18 N. C., 440. In *Duncan v. Stalcup, supra,* this Court said: "In looking into the books, we find the rule in this action to be that the jury are not restricted in their assessment of damages to the amount of the mere pecuniary loss sustained by the plaintiff, but may award damages in respect of the malicious conduct of the defendant, and the degree of insult with which the trespass was committed. The plaintiff is at liberty to give in evidence the circumstances which accompany and give character to the trespass. In *trespass quare clausum fregit* the jury are not confined to the precise value of the subject-matter of damages, although they are not allowed to go out of the way to an unreasonable amount. In trespass to the person, the jury are permitted to punish insult by exemplary damages." In *Stanford v. Grocery Co., supra,* this Court said: "This right to punitive damages does not attach, however, as a conclusion of law, because the jury have found the issue of malice in such action against the defendant. The right under certain circumstances to recover damages of this character is well established with us; but, as said in *Holmes v. R. R.,* 94 N. C., 318, such damages are not to be allowed 'unless there is an element of fraud, malice, gross negligence, insult, or other cause of aggravation in the act which causes the injury.'" In *Ammons v. R. R., supra,* it is said in the concurring opinion, which is quoted with approval in *Stanford v. Grocery Co., supra:* "Such damages are not allowed as a matter of course, but only when there are some features of aggravation, as when the wrong is done willfully or under circumstances of oppression, or in a manner which evidences a reckless disregard of the plaintiff's rights."

The various phases of the question are elaborately presented in 2 Sutherland on Damages (3 Ed.), secs. 391-403, and sus-

tains the doctrines enunciated by this Court. See, also, Hale on Damages, pp. 207 *et seq.; Smith v. Bagwell,* 15 Fla., 117; *Chiles v. Drake,* 2 Met., 146; 74 Am. Dec., 406; *Rath v. Eppy,* 80 Ill., 283; *Freese v. Tripp,* 70 Ill., 496; *Hauser v. Griffith,* 102 Iowa, 215; *Reddin v. Gates,* 52 Iowa, 210; *Ward v. Ward,* 51 Iowa, 686; *Jackers v. Borgman,* 29 Kan., 109; *Bactaker v. Staples,* 27 Minn., 308; 38 Am. Rep., 395; *Barr v. Moore,* 87 Pa. St., 385; 30 Am. Rep., 367; *Cole v. Tucker,* 6 Tex., 266. In all of these cases the rule is recognized and accepted that even where the act causing the injury is criminal, yet the plaintiff, suing to recover damages, must show, in order to recover punitive or exemplary damages, malice, fraud, wanton or willful disregard of his rights, or other circumstances of recklessness or aggravation, unless the crime producing the injury requires proof of one of these elements to constitute the offense.

The only injury done to the plaintiff was the delay in the transportation of his raft. There was no evidence that defendant had any information that plaintiff had or would use the river for such purpose. As we have said, the evidence contains no one of the elements essential to support the claim for punitive damages, and in the absence of such evidence, the sole fact that the act done by the defendant which caused the injury to plaintiff was a violation of the criminal law is not a sufficient foundation to support an allowance of punitive damages. His Honor should have directed the jury, upon the evidence, to answer the fifth issue, "Nothing." The finding upon that issue is set aside, and the judgment below will be so modified, and judgment entered for the actual damages allowed by the jury, interest and costs; and, as so modified, it is affirmed. The costs of this appeal will be taxed against the appellee.

Modified and affirmed.