CRAWFORD EDWARDS, by His Next Friend, H. E. EDWARDS, v. SOUTHERN RAILWAY COMPANY.

(Filed 22 May, 1913.)

1. Carriers of Passengers — Ejecting Passenger — Allegations — Proof—Variance—Interpretation of Statutes.

A variance between the allegation and the proof must be of such a character as to mislead the adverse party to the action; and where a railroad company is sued by a passenger for a wrongful ejection from its train alleged to have been at a certain one of its stations, and upon the trial the evidence of both parties relates with unanimity to a certain other of its stations, the variation will not be deemed as material. Revisal, sec. 515.

2. Carriers of Passengers—Ejecting Passenger—Good Faith of Conductor—Punitive Damages—Evidence.

Where a railroad company has wrongfully ejected a passenger from its train, evidence tending to show the good faith of the conductor in his belief that the passenger had not given him his ticket is not relevant except where punitive damages are recoverable.

3. Carriers of Passengers—Ejecting Passenger—Actual Damages— Instructions—Punitive Damages—Appeal and Error.

Where a recovery of punitive damages in an action against a railroad company for wrongfully ejecting a passenger from its

. train is denied by the trial court, the refusal of the court to give certain of defendant's prayers for instruction on the issue of punitive damages is not erroneous.

APPEAL by defendant from *Justice, J.,* at February Term, 1912, of RUTHERFORD.

This is an action to recover damages for wrongfully ejecting the plaintiff from the defendant's train.

The plaintiff offered evidence tending to prove that on 3 July, 1910, he bought a ticket at Lattimore for Gilkey, stations on the defendant's road; that he entered the defendant's train as a passenger; that he gave his ticket to the conductor, and that he was ejected from the train against his will at Coxe's Crossing, before he reached. Gilkey.

The ticket agent of the defendant testified in corroboration of the plaintiff as follows: "Am agent Southern Railway at Lattimore. Know plaintiff. Sold him ticket on 3d July, Sunday, 1910, from Lattimore to Gilkey. This is the stub. He paid 60 cents. Conductor asked me if I sold ticket to plaintiff for Gilkey. I told him yes. He said plaintiff had no ticket to Gilkey. Afterwards he said plaintiff had no ticket at all. Ticket would show same as stub."

There was no controversy that the plaintiff left the train at Coxe's Crossing, but the defendant offered evidence tending to prove that the plaintiff either had no ticket to Gilkey or failed to give his ticket to the conductor.

The defendant moved for judgment of nonsuit, which was overruled, and defendant excepted.

The defendant asked the court to charge the jury as follows:

"4. That if the jury should find from the evidence, or the greater weight thereof, that the conductor of the defendant believed, or had good reason to believe, that the plaintiff had not given him a ticket from Lattimore to Gilkey, and that the plaintiff had represented to the conductor that he had paid 65 cents instead of 60 cents, which was the regular fare for such a ticket, and if the jury should further find that such representation, in connection with the fact that the conductor of the defendant had not in his possession, among the tickets collected by him, a ticket from Lattimore to Gilkey, if the jury should

find from the evidence such a fact was reasonable ground to believe plaintiff had not handed him such a ticket, then the plaintiff cannot recover in this action, and the jury should answer the second issue 'No.' "

The court refused this prayer of the defendant, and the defendant excepted.

The court instructed the jury, among other things, as follows: .

1. "If you find from the evidence that the plaintiff had a ticket from Lattimore to Gilkey, and you find such fact from the greater weight of the evidence, and that he gave his ticket to the conductor, then the court instructs you that he had a right to ride on defendant's train from Lattimore to Gilkey, the destination called for in his ticket; and the court instructs you that if he was ejected from the train (unless on account of his own wrongful conduct or disorderly behavior, and there is no evidence of such behavior), his ejection was wrongful and in violation of the duty which defendant owed him, and that he would be entitled to recover compensatory damages. The amount or quantity of damage which plaintiff would be entitled to recover in this view would depend upon the facts as you find them to be from the evidence. If you find from the evidence, and from its greater weight, that the defendant's conductor, after taking up the plaintiff's ticket, went to plaintiff and again demanded a ticket, and stated that unless he paid his fare, he (the conductor) would put him off the train, and that this was stated to plaintiff in the presence of other passengers and in a manner to humiliate and wound the feelings of plaintiff, and that defendant's conductor actually did eject plaintiff from its train, then you will consider these facts as elements of compensatory damages. And if you further find that defendant's conduct in ejecting and putting plaintiff off its train was calculated to humiliate plaintiff, then you will consider his humiliation and the suffering entailed thereby as elements of damages, as above explained to you. And if you further find that the plaintiff was actually humiliated by the conduct of the defendant in putting him off the train in an out-of-the-way place, if you find that he was put

Edwards *v.* R. R.

'off at an out-of-the-way place, after he had bought and turned in his ticket to the conductor, and that he suffered mental pain on account of such conduct by defendant, then he would be entitled to compensation in damages, notwithstanding the conductor may not have had any intention of causing him humiliation and pain. The question is, Was the conduct of defendant (if you find it to be wrongful, as explained to you above) calculated to entail mental suffering upon the plaintiff by humiliation and mortification, and did he actually suffer in that manner?" Defendant excepted.

2. "The court instructs you that compensatory damages cover and include a reasonable and fair compensation for loss of time, loss of money, physical inconvenience and mental suffering and humiliation endured, and which could be considered as a reasonable and probable result of the wrong done. Of course, you must find that the plaintiff sustained the wrong, and that it was the proximate cause of the damage sustained, if you find that there was damage, and as to this you have been instructed above." Defendant excepted.

There was a verdict and judgment for the plaintiff, and the defendant excepted and appealed.

*No counsel for plaintiff.*
*S. Gallert for defendant.*

ALLEN, J. The motion to nonsuit is insisted upon in this Court, principally upon the ground of a variance between the allegation and the proof, in that the complaint alleges that the plaintiff was ejected at Rutherfordton, and the proof is he was ejected at Coxe's Crossing; but the whole record shows that there was no controversy as to place, and the Revisal, sec. 515, provides: "No variance between the allegation in a pleading and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action upon the merits."

The prayer for instruction asked by the defendant was properly denied.

Construing the verdict with the charge, the jury has found that the plaintiff was a passenger and had given his ticket to

the conductor, and that he was expelled from the train against his will. If so, his expulsion was wrongful, and gave the plaintiff ·a right of action, and the good faith of the conductor could not defeat the action, and would only be material on the question of punitive damages. *Ammons v. R. R.,* 138 N. C., 555.

The case of *McGraw v. R. R.,* 135 N. C., 264, is not in point. In that case, as the train was leaving Charlotte the plaintiff jumped on the platform of the baggage car, and the conductor testified that, "When I got to the front end of the mail car the train had begun to move, and I saw these two men up there. About the time I got there the baggage-master stepped up on the other side. I told the men to come down. They did not get down, and in order to get them on the ground before the train got up too much speed, I reached up and pulled them down and let them light on the ground. When I put the second one down I caught on the back end of the same car. I just caught hold of them and pulled them down. They did not resist. I had no conversation with them; did not see any ticket; did not suppose for a moment that they had any ticket, or they would not be there, because it was not a place for passengers, and they could not pass from that end of the car to the other. There is no doorway from the mail car to the baggage car. Passengers are not allowed to go through them at all."

On appeal it was held to be error to charge the jury, in any view of the evidence, to answer the issues against the defendant, because the plaintiff, according to the conductor, was where passengers had no right to be.

The instructions given to the jury and excepted to are fully sustained by the authorities.

The exceptions for failure to give certain instructions on the issue of punitive damages need not be considered, because his Honor expressly told the jury there was no evidence to sustain the plaintiff's allegation of punitive damages, and refused to submit the issue.

There are other exceptions in the record, which we have examined, and in which we find

No error.